968 A.2d 1196 (2009)
406 N.J. Super. 595
Vic CHANDOK, Plaintiff-Respondent,
v.
Rekha CHANDOK, Defendant-Appellant.
No. A-5871-06T3
Superior Court of New Jersey, Appellate Division.
Argued April 1, 2009.
Decided April 23, 2009.
*1197 William T. Smith, Franklin Lakes, argued the cause for appellant (Hook, Smith & Meyer, attorneys; Mr. Smith, on the briefs).
Patricia Barbarito argued the cause for respondent (Einhorn, Harris, Ascher, Barbarito & Frost, attorneys; Elizabeth M. Vinhal and Jhanice V. Domingo, Denville, on the brief).
Before Judges STERN, WAUGH and ASHRAFI.
The opinion of the court was delivered by
STERN, P.J.A.D.
Defendant-wife, Rekha Chandok, appeals from a judgment of divorce, entered on June 26, 2007, following a twelve-day trial, which addressed child support, alimony and equitable distribution. Among other things, defendant specifically challenges an order of December 6, 2006, denying her motion to recuse the trial judge. The motion was premised on defendant's assertion that she could not receive a fair and unbiased hearing because of the prior relationship of the trial judge and her attorney. The assertion was based on the breakup of the law firm in which the judge and defendant's trial attorney were partners, and the resulting acrimonious litigation between the judge and her attorney.
Following the trial, the judge concluded that plaintiff-husband's interests in his business and investments, and in the marital home in Saddle River, were acquired with family gifts and therefore exempt from distribution, as were defendant's holdings in India. In light of defendant's exempt assets and her imputed income "in the very least ... sum of approximately $513,500 annually," the judge further determined that defendant was not entitled to alimony. Plaintiff, who claimed to have supported the children, was ordered to continue doing so with respect to the parties' unemancipated son, but "no award [was] granted over and above the amount of husband's maximum obligation under the Child Support Guidelines" of $188 a week. "Any further or enhanced needs of the children [were to be] paid by wife in view of her income substantially greater than that of the husband." The parties were "granted joint legal custody," but defendant was "granted primary residential custody" of the son. Defendant was also ordered to "pay the balance of fees in the amount of $41,500 to Seymour Rubin, CPA, discovery facilitator." The judge invited an application for counsel fees to "be addressed by the Court post-judgment." However, the record does not reflect any such award.
On this appeal, defendant challenges the "judge's refusal to recuse himself," the award of the equity in the marital home exclusively to plaintiff, the denial of discovery relating to the businesses and investment accounts of plaintiff's father (claimed to include assets of plaintiff), the lack of inclusion of plaintiff's business, Fuji Novel Batteries, in equitable distribution, and the decision to exclude testimony of the parties' twenty-four-year-old adult daughter. We reverse and remand for a new trial *1198 because the trial judge should have recused himself.

I.
Upon his appointment to the bench in 1996, the trial judge placed his former partners, William T. Smith and A. Edward Hook, on his disqualification list. In 1997, the judge filed a complaint for dissolution of the partnership, and alleged, among other things, that Smith had made improper withdrawals from the firm's business account, improperly refused to disburse funds due the judge and breached the parties' "Good Will Purchase Agreement." The litigation was ultimately settled in 1998 following mediation.
The judge removed Smith and Hook from his recusal list on January 5, 2004, after almost eight years on the bench. The judge decided to take this action after Smith was substituted as counsel in an unrelated matter, Hilal v. Mulrenin, and indicated that he had no interest in seeking the judge's recusal.[1] Smith thereafter appeared before the judge "on several other occasions since that time."
In the spring of 2004, however, Smith filed a motion on behalf of the defendants in the matter of Mizrahi v. Cannon, seeking to have the judge recuse himself because of his prior litigation with Smith. In a May 17, 2004, decision denying the motion, the judge reviewed his relationship with Smith, and concluded that since Smith had begun appearing before him he had
found no ill will, bias or prejudice. There is no animosity and no hard feeling. I have long since divorced myself from the partnership split up. I have found that the settlement was very satisfactory. In retrospect, I believe it was fair to both sides. There is no continuing business relationship. I was fortunately able to purchase the interest of Mr. Smith and Mr. Hook. The settlement seems to have worked well for both sides. All three of the former partners have continued to prosper. I harbor no ill feelings toward Mr. Smith.... Our prior relationship will not in any way affect my decision in this case or in any other case.
When I read the papers submitted in this case by Mr. Smith, my reaction was somewhat one of surprise. I frankly thought that Mr. Smith, in view of his comments on the record in the Hilal case, had also removed himself from the partnership litigation and split up. I note that Mr. Smith does not now allege any animosity or ill will toward me.... I have often advised litigants before me in contested cases where there is high conflict, that they must end their ill feelings and animosity and get on with the rest of their lives. From my viewpoint, that is exactly what happened here. The conflict has ended. It is finished. We have all gone on to prosper.
In reviewing the papers submitted on this motion and the documents in the file, and after a thorough introspective insight into my own mind, I can clearly state that I bear no ill will to either of the parties in this case or to Mr. Smith. There is no bias. There is no prejudice. I will act in good conscience and mature judgment to the best of my ability in hearing this case and in coming to a conclusion. I will continue to engage the attorneys in settlement conferences in order to encourage them to make a bona fide effort to bring about a fair settlement. I will not unduly coerce any *1199 party nor will I force them to settle this case.
As an additional reason for denying recusal in the Mizrahi case, the judge also noted that Smith had been substituted as counsel on the eve of trial, thereby raising the possibility that the motion was a "tactical move to force a recusal."[2]
In the instant case, Smith was substituted as defendant's counsel on October 17, 2006, two months before the scheduled trial date. Prior thereto, the judge had criticized defendant for failing to answer discovery, and orders compelling her to provide discovery had been entered. After Smith entered the case, two management conferences were conducted before the recusal motion was filed. On November 2, 2006, a discovery order was entered in which the parties were each ordered to pay "$50,000 to a litigation fund to pay [court] appointed experts." On November 27, 2006, the judge determined that defendant "has continued to violate discovery orders and requests of both experts and the court-appointed discovery facilitator." She was also found to have "failed to produce[] the [$]50,000 fund to pay experts as previously ordered [and] has refused to pay her own forensic expert." The judge concluded "[s]he has been stonewalling discovery for several months." As a result, the judge "suppressed" defendant's pleadings and precluded her from producing evidence at the trial, which the judge scheduled to commence only nine days later on December 6, 2006.
On December 5, 2006, the day before the scheduled trial, defendant filed a motion on short notice seeking the judge's recusal because of the poor relationship between Smith and the judge, which relationship, Smith certified, had "not changed." According to counsel's accompanying certification:
2. I am an attorney admitted to practice in the State of New Jersey, and have practiced in Bergen County since 1974. I became an associate of the firm Hook and Torack in approximately 1975, and became a partner in the firm of Hook, Torack & Smith in approximately 1979. I continued as a partner in that firm with Judge Edward V. Torack until January 1, 1996 when Judge Torack went on the bench.
....
4. On March 6, 1997 a verified Complaint for Dissolution of the Hook, Torack & Smith partnership was filed by Edward V. Torack. Edward V. Torack certified that the allegations of the Complaint were true and correct. The allegations in the Complaint include, in part, the following:
a. In reference to funds withdrawn from the Hook, Torack & Smith partnership that "the amount of such withdrawals was calculated by Smith, deceitfully, willfully, wrongfully, intentionally, and in violation of his fiduciary duties to plaintiff and to the partnership, Hook, Torack & Smith, without accounting for such withdrawals in a reasonable manner according to law and as such, amounted to a wrongful conversation and theft of funds."
b. "During the partnership operations for several years, Smith, without authorization from plaintiff and Hook, unilaterally maintained a separate attorneys business account and separate attorney Trust Account in violation of the Rules of the New Jersey Superior *1200 Court into which he unlawfully diverted funds received from his clients. Such conduct violated fiduciary duties owed to plaintiff, Hook, Torack & Smith and Hook, individually. Such diversion was done deceit-fully by Smith for the purpose of evading his fair share of overhead and expenses of the partnership."
c. "Smith & Meyer, as managing partners of Hook, Smith & Meyer have willfully and wrongfully failed and refused to account for funds deposited to the Hook, Smith & Meyer attorney business account which are due to plaintiff and Hook, Torack & Smith ..."
d. "Despite the submission of said report defendant William T. Smith, has arbitrarily, capriciously, and deceitfully refused to disburse funds to Edward V. Torack from the general business account in accordance with said accounting."
....
6. The Order to Show Cause was supported by the Certification of Edward V. Torack, in which he certified all of the allegations were true. In that Certification Edward V. Torack made the following allegations against me, personally:
a. That I have engaged in "unlawful and unauthorized withdrawals from the Hook, Torack & Smith general business account."
b. That I had engaged in a "theft of partnership funds."
c. That I had assaulted him, stating, "He assaulted me in front of his desk and attempted to pull the checkbooks from my grasp. I struggled to break loose from his grasp and eventually did. I rushed to the library announcing that I was calling the police. I dialed 911, reported the assault, and asked for assistance/escort in leaving the office. The police arrived and made a record of the incident. Of course, William Smith denied the assault, claiming `I lost control.' I left with police assistance."
d. He alleged that "Smith and Meyer have repudiated their agreement with me ... and have refused to make any payments whatsoever to me on account of the purchase price." He further alleged that I "unlawfully appropriated and retained (fees)," and "the retention of such funds is in fact tantamount to a theft and is clearly a violation of fiduciary duties as well as the rules of professional conduct applicable to attorneys at law of New Jersey."
e. He further alleged that I misappropriated funds "under circumstances which I characterize as fraudulent and an outright theft."
f. He also alleged "defendants have utilized similar strong arm tactics against me in connection with the landlord/tenant relationship at the condominium office located at 801 Franklin Avenue, Franklin Lakes, New Jersey ... the rent for February, 1997 has been withheld in an effort to `pressure' me."
g. He further alleged that I withheld rent due to him in an effort to "pressure" him.
h. He further stated that I "misappropriated funds due to me representing accounts receivable on former transactions."
i. He further states, "I have received numerous letters from Mr. Smith containing nothing but lies and misrepresentations. He has constantly tried to distort bookkeeping records of the firm of Hook, Torack & Smith. He has concealed bookkeeping records of the firm of Hook, Smith & Meyer in *1201 an attempt to avoid his legal and moral obligations."
7. Among the relief sought by Edward V. Torack against myself and Gordon Meyer, was the following: "Imposing monetary sanctions and punitive damages against Smith and Meyer for their violation of fiduciary duties and wrongful, intentional and deceitful conduct arising from their unlawful retention of fees due to Hook, Torack & Smith and the unlawful diversion of Hook, Torack & Smith assets and fees and the conversion of same."
8. Edward V. Torack, as additional relief sought "punitive damages for defendant's willful, intentional, and deceitful conduct and the theft and conversion of funds of plaintiff and Hook, Torack & Smith."
. . . .
10. In response to the Complaint and Order to Show Cause with supporting Certifications filed by Edward V. Torack, a verified Answer and Counterclaim was filed on behalf of William Smith, Gordon Meyer, and A. Edward Hook, individually, and on behalf of the various partnerships. That Answer denies any wrongdoing, impropriety, deceit, or fraudulent statements. That Complaint also alleges that Judge Edward V. Torack had attempted to pressure the new law firm, Hook, Smith & Meyer and its partners, into an agreement under which he would have had a continuing improper control over law firm operations, and a continuing source of income based on a percentage of the gross fees received by the firm. Among the things he demanded were: control over the status of an associate, control over which attorney would handle his former clients' business, free legal services for his family and friends, control over his former secretaries and their compensation, etc.
11. When I, along with my new partners, refused to accept these demands, the relationship between Edward V. Torack and me, A. Edward Hook, and Gordon Meyer deteriorated, eventually resulting in the litigation which he initiated. This relationship has, to the best of my knowledge, not changed. The litigation was settled through mediation.
[(Internal citations omitted; bold portion in original).]
The recusal motion in this case was heard and denied by Judge Torack on December 6, 2006. In denying the motion, the judge noted that he had already decided the issue on at least two prior occasions, and that he was relying upon the reasons expressed in his written decision in Mizrahi v. Cannon. The judge provided counsel with copies of that decision. In his June 26, 2007, decision after trial in this case, the judge noted that the December 6, 2006, trial date "had already been scheduled by the Court" when Smith entered the case and that "Mr. Smith entered the case with full knowledge that the trial was scheduled to begin on December 6, 2006." The judge added that defendant "clearly attempted to delay this litigation and postpone the trial before and after Mr. Smith became involved in the case." The matter was nevertheless adjourned twice until January 31, 2007. Defendant's application for a further adjournment was denied.

II.
Rule 1:12-2 provides that "[a]ny party, on motion made to the judge before trial ... and stating the reasons therefor, may seek that judge's disqualification." The disposition of a motion for disqualification is "entrusted to the `sound discretion' of the trial judge whose recusal is sought." Panitch v. Panitch, 339 N.J.Super. 63, 66, 770 A.2d 1237 (App.Div.2001) (quoting Magill *1202 v. Casel, 238 N.J.Super. 57, 63, 568 A.2d 1221 (App.Div.1990)). A judge "shall be disqualified on the court's own motion and shall not sit in any matter" when, among other things, "there is any other reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so." R. 1:12-1(f). However, a judge need not "withdraw from a case upon a mere suggestion that he is disqualified `unless the alleged cause of recusal is known by him to exist or is shown to be true in fact.'" Panitch supra, 339 N.J.Super. at 66-67, 770 A.2d 1237 (quoting Hundred East Credit Corp. v. Eric Schuster Corp., 212 N.J.Super. 350, 358, 515 A.2d 246 (App.Div.), certif. denied, 107 N.J. 60, 526 A.2d 146 (1986)). On the other hand, "[i]t is unnecessary to prove actual prejudice on the part of the court, but rather `the mere appearance of bias may require disqualification'" so long as the belief of unfairness is "objectively reasonable." Id. at 67, 770 A.2d 1237 (quoting State v. Marshall, 148 N.J. 89, 279, 690 A.2d 1, certif. denied, 522 U.S. 850, 118 S.Ct. 140, 139 L.Ed.2d 88 (1997)).
Defendant contends that the judge erred in refusing to recuse himself because a reasonable person could have concluded that the he might be biased against Smith based upon their prior relationship and litigation. We agree.
The certification in support of the motion leaves no doubt that defendant could have an "objectively reasonable" belief that she could not receive a fair and unbiased hearing. See ibid. Certainly, absent extraordinary circumstances, removal of a firm or partners with whom a judge formerly practiced law from his or her disqualification list after eight years could be appropriate. However, this was not an ordinary situation.
As stated in Smith's uncontested certification,[3] in March 1997 Judge Torack filed a complaint against Smith which, in Smith's fair description of the pleadings, alleged "that Smith acted deceitfully, that Smith had embezzled funds, and that Smith had assaulted him which resulted in his calling the police." Given these facts, we cannot sustain the judgment.[4]See, e.g., DeNike v. Cupo, 196 N.J. 502, 958 A.2d 446 (2008) (recusal required where judge discussed post-retirement employment with firm of litigant before him); Rivers v. Cox-Rivers, 346 N.J.Super. 418, 788 A.2d 320 (App.Div.2002) (recusal required where judge represented plaintiff fourteen years earlier, even though he didn't remember it; result required to assure the appearance of "impartiality of judicial decision making").
We recognize that approximately eight years had passed since the litigation involving Smith and the judge was resolved; that Smith asserts he did nothing wrong by not raising the recusal issue when he sought to enter the case, despite having done so in some of his cases before the judge, and that defendant insists "[i]t is Smith's clients who have [the] right" to seek recusal "and to decide whether or not *1203 [they want] Smith to ... make an application for the judge's recusal" on an individual basis, when the client perceives a basis for so moving. However, while each client may have an independent right to determine whether he or she believes there is a "reason which might preclude a fair and unbiased hearing and judgment," R. 1:12-1(f), the issue should have been raised and resolved before Smith entered the case. Moreover, the judge should have alerted plaintiff's counsel that he and Smith had a prior professional relationship that resulted in litigation, and Smith should have alerted the court and opposing counsel that he could not give assurance that his client would not seek the judge's recusal.
In October 2006, when Smith first appeared on behalf of defendant, he requested and obtained the consent of plaintiff's attorney to his substitution. That consent was obtained without disclosing relevant information about Smith's relationship with the judge. Had plaintiff's counsel known of the relationship, she might have objected to the substitution at that relatively late date in the proceedings. By withholding the information, the judge and Smith both contributed to a course of events which requires the remedy we hereinafter discuss, notwithstanding the additional trial time and expense which will be required.
There are reasons for and against a "bright line" rule precluding a judge from hearing cases involving his or her former firm or partners for more than a specific period of time. We leave that question for the Supreme Court, which has authority to address the matter in a rule or directive, and we recognize that this judge recused himself from hearing cases with Smith for approximately eight years. However, independent of our view that the judge should have raised the recusal issue before allowing Smith into the case as counsel, and that Smith had an obligation to raise the subject with plaintiff's attorney before entering the matter, one thing is crystal clear to us: the judge should have recused himself in all of Smith's cases because of the particular nature of their prior relationship.
In any event, the bottom line, irrespective of how the matter should have been raised, is that this judge should not have sat on this case. That is because the acrimonious relationship between counsel and the judge, including the prior litigation which included charges of assault and unethical conduct, gave rise to more than a reasonable belief by an objectively reasonable litigant that the judge could not be fair and impartial. As previously noted, "`it is not necessary to prove actual prejudice on the part of the court' to establish an appearance of impropriety; an `objectively reasonable' belief that the proceedings were unfair is sufficient." Id. at 517, 958 A.2d 446 (quoting Marshall, supra, 148 N.J. at 279, 690 A.2d 1). See also DeNike, supra, 196 N.J. at 507-12, 958 A.2d 446; Panitch, supra, 339 N.J.Super. at 67, 770 A.2d 1237.

III.
Having determined that the recusal motion should have been granted, we must now determine the consequences. Plaintiff contends that the nature of the recusal and the record combine to preclude the need for reversal and the expense of a new trial.[5] As already noted, we recognize the consequences of the need for retrial, *1204 including the costs. But we cannot allow a judgment to stand when a litigant had a reasonable and legitimate belief, even before the trial began, that she might be unfairly treated, made a motion for recusal before the trial commenced and pursues the contention on direct appeal.
We have considered making a de novo review by the exercise of our original jurisdiction, or remanding to have a new judge decide the case after reviewing the record, and perhaps reconsideration of the contested rulings made by the judge after Smith entered the case. However, the parties agree as do we that the credibility determinations are critical to the appropriate outcome,[6] and such determinations require observing and hearing the witnesses. See DeNike, supra, 196 N.J. at 518, 958 A.2d 446. As stated by the Chief Justice in DeNike:
Regrettably, from the standpoint of a knowledgeable, objective observer, the brief negotiations toward the end of the litigation could reasonably have infected all that occurred beforehand. As a result, a full retrial is required to restore public confidence in the integrity and impartiality of the proceedings, to resolve the dispute in particular, and to promote generally the administration of justice.
[Id. at 519, 958 A.2d 446.]
Unfortunately, the result here also requires a new trial.
We leave to the new judge on remand to consider whether defendant's conduct, or conduct of her counsel, warrant the assessment of fees or sanctions to reduce plaintiff's expenses incident to a retrial. In that connection, the position of plaintiff on the recusal motion may be relevant in terms of whether he took a clear risk of reversal by not agreeing that the matter should be tried before another judge.[7]
The judgment is reversed and the matter is remanded for further proceedings and a new trial. As in DeNike, we encourage the parties "to stipulate to the introduction of" evidence which would shorten the retrial. Ibid. However, we do not address any other issue raised on the appeal because the parties should have the opportunity to address the new judge as to all issues considered after Smith entered the case.
Reversed and remanded. No costs or fees are awarded to defendant incident to this appeal.
NOTES
[1] In Hilal v. Mulrenin, another party filed the recusal motion in light of the relationship and believed "Smith was brought into the case solely to force a recusal and to remove the case to another judge." After the judge declined to recuse himself, the matter was apparently settled.
[2] Although on appeal we subsequently reversed the judgment in the Mizrahi case, we never addressed the propriety of the ruling on the recusal motion, noting that the issue was moot in light of the remainder of the decision. Mizrahi v. Cannon, 375 N.J.Super. 221, 235, 867 A.2d 490 (App.Div.2005).
[3] Plaintiff's counsel says she consented to Smith's entry into the case because she was unaware of the background and relationship between the judge and Smith prior to receiving the recusal motion. Thus, plaintiff does not contest the facts certified to by Smith, although counsel insists the judge or Smith had an obligation to advise her of their relationship and that a recusal motion was possible.
[4] Although defendant-wife asserts the judge "was not fair in this case," and that his prejudice left the wife of twenty-three years with none of the husband's property or the marital assets, we do not comment on the merits of the decision and should not be understood as doing so. Our decision is based solely on the relationship between the judge and defendant's attorney at all times relevant to this litigation.
[5] We recognize that Comparato v. Schait, 180 N.J. 90, 101, 848 A.2d 770 (2004), precluded a retrial because it "would work a hardship on the system" and a party, but there the ethics problem related to the law clerk's conflict not the judge's.
[6] In his opinion, the judge found "the husband consistently testified in a straightforward, candid, credible manner," whereas "the defendant frequently gave the appearance of withholding information especially on cross-examination," "was evasive when questioned about her income from activities in India," and "that her testimony with respect to her claims to the residence in the United States and the husband's assets was simply not credible," although "she succeeded in establishing sufficient proofs regarding the immunity of her India assets."
[7] Plaintiff's attorney acknowledges the judge could have precluded Smith from entering the case the judge was managing or so late in the proceedings, but as noted above, states that she was unaware of the relationship at the time and, therefore, did not object.