**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5680-16T3

S. JAY MIRMANESH and
LISA ANN MIRMANESH,
individually and derivatively
for WATERVIEW ESTATES
CONDOMINIUM
ASSOCIATION, INC.,

      Plaintiffs-Appellants,

v.

STEVEN and DAWN BRASSLETT,
RALPH and CHERYL CALIRI,
MARION MACKINNON, and
WILLIAM AND LOIS MAGUIRE,

      Defendants-Respondents.

_____

Argued February 12, 2019 – Decided May 9, 2019

Before Judges Yannotti, Gilson and Natali.

On appeal from Superior Court of New Jersey, Chancery Division, Cape May and Atlantic Counties, Docket No. C-000005-12.

Paul A. Leodori argued the cause for appellants (Law Offices of Paul Leodori, PC, attorneys; Paul A. Leodori, on the briefs).

Kathleen Barnett Einhorn argued the cause for respondents Steven and Dawn Brasslett, Ralph and Cheryl Caliri, Marion MacKinnon, and William and Lois Maguire (Genova Burns LLC, attorneys; Angelo J. Genova and Kathleen Barnett Einhorn, of counsel and on the brief; Michael C. McQueeny, on the brief).

Frank L. Corrado argued the cause for respondent Michael A. Fusco (Barry, Corrado, Grassi & Gillin-Schwartz, PC, attorneys; Frank L. Corrado, on the brief).

PER CURIAM

Plaintiffs, S. Jay Mirmanesh and Lisa Ann Mirmanesh, individually and on behalf of the Waterview Estates Condominium Association, Inc. (Association), appeal from the Chancery Division's May 19, 2017 Order that denied their motion to change venue, for leave to file a complaint against the then court-appointed receiver Michael A. Fusco, II, Esq., and for attorney's fees.[1] After reviewing the record, the parties' arguments, and the applicable

---

[1] Plaintiffs' notice of appeal indicated they also appealed from the court's January 6, 2014, February 26, 2014, August 18, 2014, and July 28, 2017 orders. Other than seeking to vacate these orders, which we address at pp. 15-17, plaintiffs failed to brief any substantive challenges to those orders. Accordingly, we deem any viable appellate issues waived. Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("An issue not briefed on appeal is deemed waived.").

2                                                                          A-5680-16T3

legal principles, we affirm in part, reverse in part, and remand for further proceedings.

I.

The Association is a non-profit corporation formed pursuant to the New Jersey Condominium Act, N.J.S.A. 46:8B-1 to -7. It operates a five-unit condominium complex located in Ocean City. On January 18, 2012, plaintiffs filed a complaint against defendants, all unit owners at the complex, seeking to enforce a May 15, 2006 Settlement Agreement (Agreement), in which the parties agreed to amend the Association's By-Laws to address issues such as the rotation of officer positions within the Association's Board of Trustees, the allowance of proxy voting, and the repair and maintenance of the Association's common elements.

On November 6, 2013, after a non-jury trial that spanned seven days, in which plaintiffs claimed defendants failed to comply with the Agreement, the court entered an oral decision and concluded that both plaintiffs and defendants violated certain provisions of the Association's Master Deed and By-Laws. The court also denied the parties' requests for counsel fees. The court determined that a fee award would be inappropriate because the court "entered partial judgments in favor of . . . and against" each party. Further, it concluded that

A-5680-16T3

because "each side has contributed to the conflagration of the issues" and engaged "in a little bit of bad faith," a fee award pursuant to the governing documents was unwarranted. The court memorialized its decision in a January 6, 2014 final judgment in which it characterized the legal fees incurred by each defendant as "legitimate expenses of the . . . [A]ssociation," to be satisfied by each party contributing an amount in accordance with his or her respective share in the Association.

The January 6, 2014 order also appointed Fusco as receiver, pursuant to N.J.S.A. 14A:14-2(2)(c).[2] Fusco was charged with undertaking "any and all lawful actions as will best and most expeditiously comport the operation of the . . . [A]ssociation with the terms and provisions of the New Jersey Condominium Act, N.J.S.A. 46:8B-1 [to -7] and the [M]aster [D]eed, [B]y-[L]aws[,] and [R]ules/[R]egulations."

Plaintiffs filed a motion for reconsideration on January 27, 2014, and the court heard oral arguments on February 20, 2014. On February 26, 2014, the court entered an order denying reconsideration, but amending the January 6,

---

[2] In its January 6, 2014 order, the court incorrectly relied on N.J.S.A. 14A:14-2. That statute applies to for-profit corporations. Because the Association is a non-profit corporation, N.J.S.A. 15A:14-2 governs the appointment and powers of receivers.

2014 order with respect to the attorney's fees award by ordering that defendants' counsel's fees were to be divided evenly among the four units they each owned. The court also concluded that plaintiffs were to pay their own counsel's fees, "all through the [A]ssociation." On April 7, 2014, plaintiffs filed an appeal from the January 6, 2014 and February 26, 2014 orders.

On June 5, 2014, while plaintiffs' appeal was pending, Fusco filed a motion seeking, among other relief, authority from the court to replace the existing Association Master Deed, By-Laws, Rules and Regulations, and Agreement with new governing documents. Plaintiffs opposed the motion and filed a cross-motion.

The trial court heard oral arguments on July 22, 2014. On August 18, 2014, the trial judge entered an order granting the receiver the authority to replace the existing Master Deed and By-Laws as he deemed appropriate, but stayed the recording of any revised Master Deed and By-Laws pending the resolution of plaintiffs' appeal. On September 17, 2014, plaintiffs amended their notice of appeal to challenge the court's August 18, 2014 order.

In an unpublished decision, we concluded that the court erred in refusing to enforce certain provisions of the Agreement. See Mirmanesh v. Brasslett, No. A-3433-13T (June 23, 2015). Our 2decision remanded the matter for the

court to consider the parties' proposed amended governing documents, and determine whether they complied with the Agreement. We also vacated the court's August 18, 2014 order because the trial court lacked jurisdiction to enter the order in light of plaintiffs' pending appeal.

On July 6, 2015, plaintiffs filed a motion for attorney's fees and costs incurred with respect to the appeal. We granted the application on July 27, 2015, and awarded plaintiffs $64,460.50 in counsel fees and $8,096.72 in costs, for a total of $72,557.22, to be paid by the Association.

On remand, the parties attempted to agree on revised documents that conformed to the Agreement and our opinion. According to Fusco, "he became convinced that drafts prepared by plaintiffs' counsel significantly exceeded what the [A]greement contemplated." Fusco also concluded that a previous draft of the Association's governing documents prepared by defense counsel was acceptable. Accordingly, on November 2, 2015, Fusco emailed defense counsel and suggested that counsel submit those documents directly to the court for consideration. The email stated:

> Now that the "fee issue" is apparently behind us (unless [plaintiffs' counsel] and his staff try to make some further issue out of it), you might wish to give some thought to filing an application with [the court] to approve the "changes" to the existing condominium documentation to comply with the Settlement

Agreement and the Appellate [Division opinion]. You and your clients might consider "striking" the first effort on the subject to beat [plaintiffs' counsel] to the proverbial "punch." Just a thought, as I would rather be in a position to support such a [motion] for the reasons we have previously discussed, rather than instituting such a move which could be construed as my "taking sides" on behalf of a side in the apparent "amendment dispute." I would rather respond then initiate which would deprive [plaintiffs' counsel] of at least one thing to complain about. I think your clients have a sound basis to make such a move in light of the historical perspective of the former settlement.

On November 17, 2015, plaintiffs moved to terminate Fusco as receiver in light of his November 2, 2015 email, which plaintiffs described as indicating a "predisposition to advance the interests of the defendants at the expense of the plaintiffs." Plaintiffs also sought an order directing the Association to adopt and record an amended Master Deed and By-Laws that plaintiffs represented were revised "to comport with the Appellate Division's decision . . . ." Finally, plaintiffs requested relief from certain provisions of the court's January 6, 2014 and August 18, 2014 orders.

On August 29, 2016, plaintiffs sought leave to file a "supplemental complaint" against the receiver, alleging negligence and breach of fiduciary duty. On August 31, 2016, the motion judge granted plaintiffs' November 17, 2015 motion and entered an order approving the amended Master Deed and

A-5680-16T3

By-Laws. He also terminated Fusco as the court-appointed receiver, and directed him to prepare a status report on certain outstanding matters.

The August 31, 2016 order did not, however, address plaintiffs' request to file a supplemental pleading against Fusco. On September 7, 2017, Fusco filed a certification in opposition to that application. On November 30, 2016, plaintiffs submitted an amended proposed supplemental complaint against Fusco to include claims for declaratory judgment, disgorgement, breach of contract, bad faith, promissory estoppel, malicious use of process, abuse of process, tortious interference, and "prima facie tort."

In addition to its request to serve a supplemental complaint upon the then-discharged receiver, plaintiffs also filed a motion for attorney's fees, seeking $303,066.79[3] in connection with the trial and post-trial proceedings, excluding the $72,557.22 in fees awarded in accordance with our July 27, 2015 order. Plaintiffs' motion was supported by certifications from Alexander J. Barrera, Esq., a Perskie attorney, and Dennis A. Estis, Esq., and Emily Kaller, Esq., attorneys at Greenbaum. Perskie represented plaintiffs during the trial proceeding from January 2012 to January 2014. Thereafter, Greenbaum

---

[3] Plaintiffs sought $152,777.79 in fees incurred by Perskie Mairone Brog & Baylinson (Perskie), and $150,289 incurred by Greenbaum, Rowe, Smith, & Davis LLP (Greenbaum).

A-5680-16T3

represented plaintiffs in the post-trial matters, including the appellate and remand proceedings.

On March 25, 2017, plaintiffs filed a pro se motion for change of venue, ostensibly under Rule 4:3-3.[4] The motion was heard by a second motion judge. Plaintiffs based their request for a change of venue on four grounds. First, they claimed they were disadvantaged based on the receiver's hostility toward them and his "notoriety" in the vicinage. Second, they claimed that in 2002, the second motion judge, prior to his appointment to the bench, mediated a case involving the receiver. Third, plaintiffs contended that Dorothy McCrosson, Esq., who was hired by the Association in 2004 to prepare the Association's governing documents, including the Master Deed and By-Laws, was a partner in the receiver's law firm, and actively socializes with the receiver. Fourth, plaintiffs contended that the court proceedings were imbued with an appearance of impropriety because McCrosson was the mother of the first and second motion judges' law clerk.

---

[4] Although plaintiff expressly based its motion on Rule 4:3-3, the court evaluated plaintiffs' application as a motion for disqualification, pursuant to Rule 1:12-2. We address the issue consistent with the trial court's interpretation of plaintiffs' application.

A-5680-16T3

The court heard oral arguments on the outstanding motions on May 19, 2017, and entered an order and written opinion the same day denying plaintiffs' motions for change of venue, for leave to file a supplemental complaint against the receiver, and for attorney's fees. After thoroughly considering the parties' arguments, the court determined that plaintiffs failed "to establish a ground upon which [it] could transfer this case to a new venue." The second motion judge found plaintiffs' arguments regarding either the court's, or the receiver's, impartiality, based on any relationship with McCrosson to be meritless. As the court noted, McCrosson left the receiver's law firm twenty-four years prior to the date of the hearing and "it [was] unclear how [that personal relationship] would affect the professional judgment of th[e] [c]ourt." The court, similarly, found it "entirely unreasonable to believe that a [j]udge may not hear a case in which there is a party for whom he mediated [a case] thirteen years prior," and noted that judges are permitted to hear cases "in which that [j]udge's former partner is counsel, so long as at least seven years has elapsed since the [j]udge had any interest in that firm."

In denying plaintiffs' fee request, the court explained that the court's January 6, 2014 judgment, which denied the parties' request for attorney's fees, was grounded in the court's finding that the parties acted in bad faith. The court

concluded that granting plaintiffs' motion would effectively overturn that factual and legal conclusion. Further, the court noted that by failing to appeal the portion of the January 6, 2014 order denying plaintiffs' request for attorney's fees, plaintiffs waived any challenge to those fees. Finally, the court concluded that application of the res judicata doctrine mandated denial of plaintiffs' motion.

With respect to plaintiffs' motion for leave to file a supplemental complaint, the court explained that because there was no factual or legal basis for any of the eleven proposed claims, permitting an amendment would be futile. The court noted that the parties actively negotiated the amended governing documents consistent with our June 23, 2015 opinion, and submitted those materials to the court for its independent evaluation. After reviewing those amended governing documents, the court, not the receiver, approved them and discharged the receiver at plaintiffs' request.

Plaintiffs filed a motion for reconsideration on June 7, 2017. After hearing oral arguments, the court entered an order on July 28, 2017, denying the motion. This appeal followed.

On appeal, plaintiffs raise three points of error. First, plaintiffs maintain that the court improperly denied their request to file an amended complaint

11

against the receiver. Second, they contend that in accordance with Rule 1:12, the court should have disqualified itself, and transferred the matter to another court, in light of the "appearance of impropriety" caused by the professional relationship between McCrosson and defendants, and the fact that McCrosson was the mother of the was first and second motion judges' law clerk. Finally, plaintiffs claim that the trial court abused its discretion when it denied their application for reimbursement of the Perskie and Greenbaum fees.

We disagree with plaintiffs' first and second arguments and affirm substantially for the reasons detailed in the court's May 19, 2017 written decision. We also disagree with plaintiffs' claim that the court abused its discretion when it denied their fee application with respect to the Perskie fees, and similarly affirm for the reasons detailed in the court's opinion. However, because we are unable to determine the factual or legal bases for the court's decision denying plaintiffs' motion regarding the Greenbaum fees, we reverse that portion of the court's May 19, 2017 order, and remand for additional factual findings, consistent with Rule 1:7-4.

## II.

With respect to their first argument, plaintiffs assert that the court abused its discretion when it denied their motion to file a supplemental complaint

A-5680-16T3

against the receiver. Plaintiffs further claim that the court's decision to deny their motion to serve a supplemental complaint was the "product of judicial bias and the appearance of judicial bias." We disagree.

"Rule 4:9-1 requires that motions for leave to amend be granted liberally." Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006) (quoting Kernan v. One Washington Park Urban Renewal Assocs., 154 N.J. 437, 456 (1998)). The court's decision on a party's motion to file an amended complaint "always rests in the court's sound discretion." Ibid. "That exercise of discretion requires a two-step process: whether the non-moving party will be prejudiced, and whether granting the amendment would nonetheless be futile." Ibid. An abuse of the court's discretion arises when "a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigration & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

In determining whether a requested amendment is futile, the court must ask "whether the amended claim will nonetheless fail and, hence, allowing the amendment would be a useless endeavor." Notte, 185 N.J. at 501. Accordingly, "courts are free to refuse leave to amend when the newly asserted claim is not

13

sustainable as a matter of law." Ibid. (quoting Interchange State Bank v. Rinaldi, 303 N.J. Super. 239, 256-57 (App. Div. 1997)).  Stated otherwise, "there is no point to permitting the filing of an amended pleading when a subsequent motion to dismiss must be granted."  Ibid. (quoting Interchange State Bank, 303 N.J. Super. at 257).

As the second motion judge correctly noted in his May 19, 2017 opinion, "when a receiver is appointed by the court to manage property," he acts "in [an] official capacity and [can] only be found liable in that capacity, not personally." J.L.B. Equities v. Dumont, 310 N.J. Super. 366, 374 (App. Div. 1998).  Here, plaintiffs claim the receiver improperly discharged his official responsibilities, wasted Association assets, and acted partially when preparing the amended governing documents.  As the court correctly concluded, there was no support in the record to support plaintiffs' claims against the receiver.  The parties, assisted by competent counsel, negotiated the amended governing documents in accordance with our June 23, 2015 opinion.  Further, plaintiffs' counsel submitted the documents to the court.  The court thereafter reviewed, approved, and adopted "[p]laintiffs' proposed [amended] Master Deed and By-Laws" and memorialized that finding in its August 31, 2016 order.  Any opinions the receiver may have expressed to defendants in the November 2, 2015 email had

no effect on the final governing documents approved by the court. Further, the court comprehensively evaluated each of the eleven proposed causes of action and determined they were factually baseless. We therefore conclude the court did not abuse its discretion when it denied plaintiffs' application to sue the receiver, as their claims would not have survived a subsequent motion to dismiss.

III.

We also reject plaintiffs' claim that the second motion judge erred in failing to disqualify himself, and refusing to vacate the May 19, 2017 order, "and all other rulings made by the trial court in this matter." We also disagree with plaintiffs' claim that the court failed to address properly the issue of McCrosson's son serving as the law clerk to the first and second motion judges, disclose whether McCrosson discussed her prior representation of the Association with her son, and advise if either motion judge took any precautions to prevent any improper conversation between McCrosson and her son regarding this matter.

Pursuant to Rule 1:12-2, "any party, on motion to the judge before trial or argument and stating the reasons therefor, may seek that judge's disqualification." "The disposition of a motion for disqualification is entrusted

15

to the sound discretion of the trial judge whose recusal is sought." Chandok v. Chandok, 406 N.J. Super. 595, 603 (App. Div. 2009). Additionally, pursuant to Rule 1:12-1(g):

> The judge of any court shall be disqualified on the court's own motion and shall not sit in any matter . . . where there is any . . . reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so.

A judge is not required to "withdraw from a case upon a mere suggestion that he is disqualified unless the alleged cause of recusal is known by him to exist or is shown to be true in fact." Panitch v. Panitch, 339 N.J. Super. 63, 66 (App. Div. 2001) (quotation marks omitted). However, a party seeking a judge's disqualification need not prove actual prejudice, but instead, "the mere appearance of bias may require disqualification so long as the belief of unfairness is objectively reasonable." Chandok, 406 N.J. Super. at 604 (quotation marks omitted). Thus, courts should ask whether "a reasonable, fully informed person [would] have doubts about the judge's impartiality." DeNike v. Cupo, 196 N.J. 502, 517 (2008).

After a thorough review of the record, we conclude that the second motion judge did not abuse his discretion in refusing to disqualify himself and transfer the matter. As the court correctly noted, McCrosson's representation of the

Association ended in 2004, thirteen years before the second motion judge presided over this matter.

Further, the second motion judge explained that although McCrosson had a role in drafting the Association's Master Deed and By-Laws, her representation of the Association took place prior to the execution of the Agreement, and before any disputes arose that led to the 2013 trial. In addition, with respect to the appearance of impropriety based on the purported relationship between the receiver, McCrosson, and her son, the court explained in its May 19, 2017 opinion that "[p]laintiffs' claims are . . . subjective and unestablished, sometimes patently false." We conclude that there is nothing in the record that would lead a "reasonable, fully informed person" to doubt the court's impartiality here. In fact, from our review of the record it is clear that the court thoroughly and fairly considered all of plaintiffs' claims. Finally, we conclude that the court complied with its obligation under Rule 1:7-4.

## IV.

Finally, we address plaintiffs' attorney's fee argument in the manner they presented it, by first addressing the fees incurred by Perskie, and then the Greenbaum fees. As to the Perskie fees, we conclude that the court did not abuse its discretion in denying plaintiffs' motion, as the court's January 6, 2014

17

decision denying those fees was amply supported by the record, and plaintiffs waived any request for those fees as a result of their failure to raise that issue when it appealed the court's January 6, 2014 order.

"Although New Jersey generally disfavors the shifting of attorneys' fees, a prevailing party can recover those fees if they are expressly provided for by statute, court rule, or contract." Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 440 (2001). Rule 4:42-9 allows awards of attorney's fees in specific situations, including "[i]n all cases where attorney's fees are permitted by statute." R. 4:42-9(a)(8). In awarding attorney's fees, a court should properly consider "[b]ad faith and assertion of an unreasonable position." Diehl v. Diehl, 389 N.J. Super. 443, 455 (App. Div. 2006). Our review of an award of attorney's fees award is deferential, Packard-Bamberger & Co., 167 N.J. at 444, and "fee determinations by trial courts will be disturbed only on the rarest occasions, and then only because of a clear abuse of discretion." Rendine v. Pantzer, 141 N.J. 292, 317 (1995).

In his May 19, 2017 decision, the second motion judge explained that the court's January 6, 2014 denial of plaintiffs' request for attorney's fees was based on "the equitable principle of bad faith." Indeed, the trial judge noted that "each side . . . contributed to the conflagration of the issues," and there was "a little

A-5680-16T3

bit of bad faith on each side." The record supports the initial judge's bad faith finding, and his discretionary decision to deny fees to both parties.

To the extent plaintiffs disagreed with any portion of the January 6, 2014 final judgment, they were obligated to file a timely notice of appeal identifying all issues to be raised on appeal. See R. 2:5-1; Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 461 n.1 (App. Div. 2002) ("The appellant should explicitly designate all judgments, orders[,] and issues on appeal in order to assure preservation of their rights on appeal."). As noted, when plaintiffs appealed the January 6, 2014, February 26, 2014, and August 18, 2014 final orders, they did not appeal the court's denial of their request for attorney's fees, and our June 23, 2015 opinion appropriately did not address the issue. We agree with the court that by failing to seek appellate review regarding the recoverability of their attorney's fees related to the 2013 trial, plaintiff waived any challenge to that portion of the court's January 6, 2014 order.

Plaintiffs incorrectly argue that because they prevailed in the initial appeal, and were awarded $72,557.22 in attorney's fees and costs, they are entitled to all attorney's fees incurred at trial totaling $152,777.79, pursuant to the preclusive doctrines of res judicata and the law of the case doctrine. See Velasquez v. Franz, 123 N.J. 498, 505 (1991) ("[T]he doctrine of res judicata

19

provides that a cause of action between parties that has been finally determined on the merits by a tribunal having jurisdiction cannot be relitigated by those parties or their privies in a new proceeding."); State v. Hale, 127 N.J. Super. 407, 410 (App. Div. 1974) ("[T]he 'law of the case' doctrine 'applies to the principle that where there is an unreversed decision of a question of law or fact made during the course of litigation, such decision settles that question for all subsequent stages of the suit.'"). As noted, we appropriately did not consider the court's January 6, 2014 denial of attorney's fees in the initial appeal because plaintiffs did not challenge that ruling. Thus, neither res judicata nor the law of the case doctrine has any application to plaintiffs' subsequent attorney's fees request.

We reach a different conclusion, however, with respect to the Greenbaum fees. Plaintiffs argue that as the prevailing party, they are entitled to all the fees they incurred for Greenbaum's services, pursuant to N.J.S.A. 15A:3-4(c), Rule 4:42-9, and the Association's governing documents.

We are unable to make a substantive determination as to whether plaintiffs may recover the Greenbaum fees, as the trial court failed to make the necessary factual findings with respect to that portion of plaintiffs' application. Pursuant to Rule 1:7-4, the court is required to, "by an opinion or memorandum decision,

either written or oral, find the facts and state its conclusions of law thereon." The court "must state clearly its factual findings and correlate them with the relevant legal conclusions." Curtis v. Finneran, 83 N.J. 563, 570 (1980).

As noted, the court's May 19, 2017 decision detailed three bases for denying plaintiffs' fee request: 1) the trial court found that the parties acted in bad faith; 2) plaintiffs failed to challenge the denial of the attorney's fees in its appeal from the January 6, 2014 order; and 3) the doctrine of res judicata barred plaintiffs' claims for attorney's fees.

With respect to the first basis, the trial court's bad faith finding related only to the parties' conduct leading to the January 6, 2014 final judgment. The fees incurred by Greenbaum, however, are unrelated to those proceedings. Further, plaintiffs did not waive the right to seek recovery of the post-remand Greenbaum fees, as they were not yet incurred and could not be subject of the January 6, 2014 order. For similar reasons, neither res judicata, nor the law of the case doctrine barred those fees. See Velasquez, 123 N.J. at 505; Hale, 127 N.J. Super. at 410.

As a result, because none of the court's factual and legal conclusions supporting its denial of the Perskie fees apply to the Greenbaum fees, we are unable to conclude, on this record, if there is a legal and factual basis to award

plaintiffs these fees, and if they are reasonable.  See Rendine, 141 N.J. at 317.

Therefore, we remand for the court to make factual findings, consistent with

Rule 1:7-4.  We pass no judgment as to the merits of plaintiffs' application.

To the extent we have not addressed any of plaintiffs' arguments, we deem

them without sufficient merit to warrant discussion in a written opinion.  See R.

2:11-3(e)(1)(E).

Affirmed in part, reversed in part and remanded for further proceedings

consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-5680-16T3