770 A.2d 1237 (2001)
339 N.J. Super. 63
Richard S. PANITCH, Plaintiff-Appellant,
v.
Lisa M. PANITCH, Defendant-Respondent.
G.R. Wholesalers, Inc., Plaintiff-Appellant,
v.
Philip N. Sobel, Sobel and Brown, P.C., Defendants, and
Lisa M. Panitch, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted February 20, 2001.
Decided April 5, 2001.
*1238 Perrotta, Fraser & Forrester, Clark, attorneys for appellant G.R. Wholesalers, Inc. (Donald B. Fraser, Jr., on the brief).
Morris, Downing & Sherred, Newton, attorneys for appellant Richard S. Panitch (Peter J. Laemers, on the brief).
Sobel and Brown, East Hanover, attorneys for respondent Lisa M. Pantich (Philip N. Sobel, on the brief).
Before PETRELLA, NEWMAN, and BRAITHWAITE, JJ.
The opinion of the court was delivered by PETRELLA, P.J.A.D.
Plaintiffs Richard S. Panitch and G.R. Wholesalers, Inc. (GRW)[1] appeal on leave granted from the denial of their motion to recuse the trial judge. Plaintiffs argue that the Family Part Judge, who presided over pretrial motions and case management proceedings in the contested matrimonial litigation between Panitch and his wife, Lisa M. Panitch, made improper remarks and took certain actions that are indicative of bias and prejudgment of certain issues, thereby warranting recusal. Specifically, plaintiffs allege that several comments made by the judge violated the Code of Judicial Conduct.
After hearing argument, the judge denied the recusal motion. The judge stated that he was not prejudiced in the case and that anything he said was a "blast of frustration" directed toward the fact that Richard Panitch, who is a lawyer with a large law firm in this State, was continually delaying the discovery process by failing to cooperate with the court-appointed mediator and accountant, who was to appraise motel property owned by Richard Panitch. Lisa Panitch requested the judge to make a determination as to the source and use of the income from the motel for the purpose of calculating alimony.

I.
R. 1:12-2 provides "[a]ny party, on motion made to the judge before trial or argument and stating the reasons therefor, may seek that judge's disqualification." A motion for recusal may be granted for *1239 any "reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so." R. 1:12-1(f). Such a motion must "be made before trial or argument." N.J.S.A. 2A:15-50; Bonnet v. Stewart, 155 N.J.Super. 326, 330, 382 A.2d 930 (App.Div.), certif. denied, 77 N.J. 468, 391 A.2d 483 (1978). The disposition of the motion is, at least in the first instance, entrusted to the "sound discretion" of the trial judge whose recusal is sought. Magill v. Casel, 238 N.J.Super. 57, 63, 568 A.2d 1221 (App.Div.1990); Bonnet, supra (155 N.J.Super. at 330, 382 A.2d 930).
It is improper for a judge to withdraw from a case upon a mere suggestion that he is disqualified "unless the alleged cause of recusal is known by him to exist or is shown to be true in fact." Hundred East Credit Corp. v. Eric Schuster, 212 N.J.Super. 350, 358, 515 A.2d 246 (App.Div.), certif. denied, 107 N.J. 60, 526 A.2d 146 (1986). The challenged judge who hears the motion should clearly set forth the "objective and subjective bases for the ultimate decision." Magill, supra (238 N.J.Super. at 65, 568 A.2d 1221). In construing the analogous federal statute on judicial disqualification, Justice Kennedy stated in a concurring opinion that "[i]f through obduracy, honest mistake, or simple inability to attain self knowledge the judge fails to acknowledge a disqualifying predisposition or circumstance, an appellate court must order recusal no matter what the source." Liteky v. U.S., 510 U.S. 540, 563, 114 S.Ct. 1147, 1161, 127 L. Ed.2d 474, 495-496 (1994) (Kennedy, J., concurring). "Litigants ought not have to face a judge where there is reasonable question of impartiality ..." Alexander v. Primerica Holdings, Inc., 10 F.3d 155, 162 (3d Cir.1993).
It is unnecessary to prove actual prejudice on the part of the court, but rather "the mere appearance of bias may require disqualification.... However, before the court may be disqualified on the ground of an appearance of bias, the belief that the proceedings were unfair must be objectively reasonable." State v. Marshall, 148 N.J. 89, 279, 690 A.2d 1, cert. denied, 522 U.S. 850, 118 S.Ct. 140, 139 L.Ed.2d 88 (1997).

II.
Plaintiffs argue that the Family Part Judge's actions violated Canons 2A and 3A(3) of the Judicial Code of Conduct and demonstrated ill will towards them.
Canon 2A provides:
A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
Canon 3A(3) provides:
A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, and should not permit lawyers, court officials, and others subject to the judge's direction and control to display impatience or discourtesy or to detract from the dignity of the court.
Specifically, plaintiffs assert that the judge used inappropriate language during a case management conference call in which counsel for both plaintiffs as well defendant participated. Plaintiffs claim the judge told counsel (referring to Richard Panitch) "I'll put the [expletive deleted] guy in jail." Plaintiffs further claim that during the call, the judge ordered *1240 plaintiffs to "produce the [expletive deleted] documentation" and threatened to call the senior partner of the law firm where Richard Panitch was employed. The Family Part Judge did not dispute that he may have used inappropriate language during the conference call. However, he said that the comments were not directed at Richard Panitch, but rather were an expression of his frustration over the numerous court proceedings and plaintiff's delay of discovery for almost a year.
Although the judge's comments were inappropriate and may have been cause for recusal as well as contrary to the Code of Judicial Conduct, inappropriate comments do not, by themselves, necessarily equate to bias. See State v. Leverette, 64 N.J. 569, 319 A.2d 219 (1974) (trial judge not disqualified by having expressed displeasure with defense counsel who failed to appear for five successive calendar calls). It is significant that the judge did not impose any sanctions upon plaintiff, who as a lawyer had perhaps an even greater obligation to comply with court orders, although it was certainly within his discretion to do so as Panitch appears not to have cooperated with the court-ordered mediation or with the accountant who was appointed to conduct the appraisal. See Cavallaro v. Jamco Property Mgt., 334 N.J.Super. 557, 570-571, 760 A.2d 353 (App.Div.2000) (Trial courts have discretionary authority to impose sanctions for violations of discovery rules).
Plaintiffs rely upon James v. City of East Orange, 246 N.J.Super. 554, 563-564, 588 A.2d 412 (App.Div.1991), where we directed that the matter, on remand, be presided over by a different judge because of the trial judge's castigation and belittling treatment of plaintiff's attorney in the jury's presence. However, James is distinguishable because the language was used during trial and in the presence of the jury. Further, the appeal did not concern the denial of a motion for recusal. Rather, we reversed and remanded the case on other grounds and stated that it was "unnecessary to the disposition of [the] appeal to reach a judgment as to whether the judge exhibited bias." Id. at 564, 588 A.2d 412.
Plaintiffs also argue that recusal is warranted because the judge made inaccurate and incomplete references to the record in his supplemental August 8, 2000 letter. Specifically, in response to the judge's statement that Panitch refused to participate in mediation and comply with discovery orders, plaintiffs claim Panitch was never offered mediation and is unaware of any discovery orders that he violated. Finally, plaintiffs claim there is no support for the judge's assertion that Panitch was acting in bad faith.
In his oral opinion denying the motion for recusal, the judge stated that almost one year ago he appointed an economic mediator, pursuant to R. 1:40-4(a), but that Panitch refused to cooperate with the mediator. The judge also stated that, pursuant to R. 5:3-3(b), he appointed an accountant to appraise the value of the motel property owned by Richard Panitch for the purpose of calculating the amount of alimony owed by him. However, Panitch did not provide any financial information to the accountant. Thus, Panitch failed to comply with the discovery orders and the assertion that recusal is warranted because the judge made inaccurate and incomplete references to the record, is without merit.
In his August 8, 2000 supplemental, written decision, the judge noted that:
since the inception of the case in October 1997, there have been over thirty *1241 (30) court proceedings, and to this date there has been little or no discovery. The plaintiff has violated the orders for the production of documents; to cooperate with the accountant for an evaluation of the motel; to cooperate with the mediator appointed by the Court to assist the Special Master in being able to approve the potential sale of the motel.
The judge also observed:
The incident complained of occurred during a telephone conference call where the Court and all counsel were present except for the attorney for the corporation. It was at that time, the Court was advised that the plaintiff had rejected what the Court thought was an agreement of counsel to have a real estate appraisal made of a motel located in South Brunswick, which had been acquired by the plaintiff, one-half by gift from his father and the remaining half by a bequest under his father's Last Will and Testament. It is not contested that the motel business or the real estate on which it is located is exempt from equitable distribution.
Ever since the matter was transferred from Judge Friend, now retired, to me, the amount of cash flow from the business has been an issue. This information is necessary to determine the amount to be awarded for alimony and child support in this matrimonial action.

* * *
The genesis of the incident referred to, was that there was an agreement by the plaintiff's attorneys to proceed with the appraisal so that an offer to purchase the property could be accepted. The telephone conference call was initially believed to be a confirmation of this agreement. However, when the plaintiff refused to proceed with the agreement and had his attorneys withdraw their consent to the appraisal, the Court's reaction was a verbal expression of exasperation of the situation. It was not in any way directed at the plaintiff. This incident was not in Court, but on the telephone with attorneys and was an expression of frustration at having the discovery process again delayed after over 2 1/2 years of litigation.
If the motel is to be sold, a central issue is the value of the asset. If the asset is to be retained, then the cash flow must be assessed for a determination of alimony and child support. This has and still remains the central issue. Diverting the focus of this matter to a motion for recusal of the Court will not change the central facts of this case. It will only delay the inevitable.
It is especially hard to understand how the plaintiff would not cooperate in this matter, as he is an attorney-at-law of the State of New Jersey employed by [a prestigious firm] as an associate.
There have been allegations made by the defendant, that her husband received cash from the motel manager on a regular basis, and presumably he still does. She has also raised issues of tax fraud (Sheridan v. Sheridan, 247 N.J.Super. 552, 589 A.2d 1067[[2]]). Such allegations cannot be ignored by the Court. Should those allegations be proven to be true it could jeopardize his position with his employer and his standing at the Bar. The allegations that the court would contact his employer *1242 is untrue. The plaintiff appears to be his own worst enemy, as his employer would probably not continue to engage him as an associate who has violated court orders and may be subject to tax fraud litigation. As a result of his failure to comply with discovery, he will be the instrument of his own downfall by not complying with discovery orders nor participating in the non-judicial arena of mediation with the accountant to properly evaluate the asset and to be able to make recommendations to the parties and the mediator. [Emphasis in original].
This matter has not proceeded past the discovery stage and, thus, the only actions the Family Part Judge took were with respect to discovery issues and case management. We discern no evidence of bias in the judge's handling of the discovery. The discovery orders were authorized under the court rules and the judge has not imposed sanctions for Panitch's noncompliance. Further, at the hearing on the motion for recusal, the judge clearly set forth the bases for his discovery orders and there is no appearance of any bias that would make disqualification appropriate. Therefore, the judge did not abuse his discretion in denying plaintiffs' motion for recusal. State v. Marshall, supra (148 N.J. at 279, 690 A.2d 1).
Although we affirm the denial of the recusal motion, we add some cautionary remarks. When becoming too intimately involved with discovery and case management, which may inevitably lead to settlement discussions, a judge may reach a point where it may well appear to the clients that one side is being favored over another. We caution that excessive involvement in proceedings before trial in cases where that judge will ultimately be the fact finder would dictate that the judge should step aside and allow another judge to try the case because of opinions expressed. We are not addressing the usual non-jury case where a judge must necessarily be involved to some degree, although not completely immersed, in attempting to move a case or encourage settlement of a case. Settlements, of course, are always desirable from the standpoint of the litigants as well as the court system. We merely caution, without deciding now, that it may well be appropriate before this case reaches trial for the judge to consider whether he should step down from hearing the actual trial of the case because of the degree of involvement.
Affirmed.
NOTES
[1] Panitch is a 50% shareholder in GRW. After defendant Lisa M. Panitch filed a lis pendens against GRW's property, it instituted suit against defendant and her attorneys alleging that defendant fraudulently created a new case caption, which included GRW as a party defendant. GRW sought damages for fraud, slander of title and abuse of process. This action was consolidated with the Panitch matrimonial litigation.
[2] Sheridan v. Sheridan, 247 N.J.Super. 552, 589 A.2d 1067 (Ch.Div.1990).