**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-6003-17T3

DAVID PINCKNEY,

    Plaintiff-Appellant,

v.

CATHERINE DERY,

    Defendant-Respondent.

_____

Submitted April 29, 2020 – Decided May 28, 2020

Before Judges Whipple and Gooden Brown.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FD-07-2588-12.

David Pinckney, appellant pro se.

Respondent has not filed a brief.

PER CURIAM

    Plaintiff David Pinckney (father) appeals from the July 13, 2018 Family

Part order, entering judgment in favor of defendant Catherine Dery (mother) in

the amount of $51,028.89 for plaintiff's unpaid child support, and transferring venue from Essex to Somerset County where defendant and the parties' two children currently reside. We affirm.

Plaintiff and defendant were married in 2004 in Accra, Ghana, and separated in 2011. Two children were born of the marriage, one in 2005, and the other in 2009, both girls. Following the separation, the parties engaged in extensive motion practice regarding custody, parenting time, and child support. As a result of the various motions, the parties were awarded joint legal custody of the children in an October 4, 2011 order, "plaintiff's request for a change in custody [was] denied" in a January 11, 2012 order, plaintiff's child support obligation was established in a March 1, 2012 order in the amount of $198 weekly, "payable by income withholding from [plaintiff's] employer, Irvington Board of Education,"[1] and plaintiff's parenting time every weekend was continued in an April 5, 2012 order. The latter order also noted that "plaintiff

---

[1] Plaintiff's child support was calculated based on 104 overnights and an annual salary of $80,171 as a teacher. An annual income of $37,000 was imputed to defendant, then an unemployed hotel manager.

A-6003-17T3

withdrew his application for custody." Neither party appealed any of these earlier orders.[2]

On May 31, 2012, plaintiff filed for divorce in Essex County. On October 17, 2014, the parties executed a custody and parenting time agreement, which was approved by the court in a consent order. In the agreement, the parties "agree[d] that they shall have joint legal custody of the minor children and [defendant] shall be the [p]arent of [p]rimary [r]esidence." The parties also agreed to a detailed parenting time schedule, with plaintiff "enjoy[ing] parenting time" every weekend, over one month in the summer, alternate winter and spring breaks, and specified holidays. When the agreement was executed, both parties were represented by counsel.

On April 18, 2018, defendant moved to enforce litigant's rights in connection with plaintiff's non-payment of child support, and sought a warrant for his arrest. Plaintiff also requested a transfer of venue from Essex to Somerset County and other relief. On April 24, 2018, plaintiff cross-moved to enforce litigant's rights to prevent defendant from "interfering with . . . plaintiff's

---

[2] The March 1 and April 5, 2012 orders were entered by Judge Donald A. Kessler.

A-6003-17T3

custodial right[s]" and "alienating the affection between [plaintiff]" and his children. Plaintiff also sought other relief not pertinent to this appeal.

On July 13, 2018, the judge conducted oral argument on the motions with both parties appearing pro se. The judge confirmed that neither party resided in Essex County, defendant having moved with the children to Somerset County and plaintiff having moved to Passaic County in 2016. Further, defendant acknowledged that he was $51,028.89 in arrears in his child support payments and only paid defendant $3 per week through "automatic" bank payments. Defendant told the judge he had "lost [his] job" as "a teacher," his "unemployment ran out in 2016," and he had no "steady income." However, he acknowledged that he was "an independent contractor," and that he "[did] odd jobs," including working as "a security guard," "a substitute teacher," and a "Lyft" driver.

Plaintiff claimed he did not have to pay child support as previously ordered because "there was never a hearing" regarding custody. Instead, plaintiff contended that in October 2011, the parties "were given a joint custody . . . order," but when he came "back [to court] in March," he was improperly ordered to pay "child support and [had his] custody rights changed" without a hearing. Plaintiff explained that he had filed an action "in [f]ederal [c]ourt,"

A-6003-17T3

because his "due process ha[d] been trampled" by "previous judges." He claimed that because the "child support order" was entered without "a hearing" to change his "custody rights," it constituted "a Bill of Attain[d]er."[3] As indicated in his moving papers, plaintiff "request[ed] that the [c]ourt refrain from doing anything . . . until [his] case in [f]ederal [c]ourt [was] finished" because he had "the Essex County Family Court as a party in [his] [f]ederal [c]ourt lawsuit" and it would be "a conflict of interest" for the court to take any punitive action against him while the lawsuit was pending. Defendant countered that although this was not a "custody hearing," she had been awarded residential custody of the children dating back to 2011, but plaintiff kept insisting that custody was never adjudicated.[4]

In an oral decision from the bench, the judge noted there were no "disputes of material facts with respect to the specific items . . . before the [c]ourt," and

---

[3] "A bill of attainder, by the common law, as . . . imported . . . from England . . . , before the adoption of the Constitution, was an act of sovereign power in the form of a special statute by which a [person] was pronounced guilty or attainted of some crime, and punished . . . without trial or judgment . . . ." United States v. Lovett, 328 U.S. 303, 322 (1946) (Frankfurter, J., concurring). Under the United States Constitution, a bill of attainder is "a legislative act which inflicts punishment without a judicial trial." Id. at 315.

[4] The judge agreed that there was no "change in custody" application before the court.

determined that plaintiff "ha[d] violated" the "child support order." Citing Rule

5:3-7 and Rule 1:10-3,[5] the judge determined that instead of issuing a warrant

for plaintiff's arrest as requested by defendant, it was "appropriate" to enter "a

judgment in the amount of $51,028.89 as of July 2[], 2018" with interest to

accrue. The judge explained

> [P]laintiff has indicated that he works various endeavors, but does not have a full-time job that could be subject to garnishment.
>
> The remedy of fixing a judgment upon which interest accrues allows the other party, the obligee, to have a judgment for those amounts in order to be able to determine whether or not there are assets upon which . . . defendant could . . . seek to execute . . . .
>
> The [c]ourt will, in addition to fixing the amount and entering that as a judgment[,] provide that . . . plaintiff shall, within [thirty] days of today, provide to [d]efendant a certified list of all his assets including any automobiles, bank accounts or any other real . . . or personal property of any sort. And that could provide . . . information to [d]efendant on which she could seek recourse to . . . obtain some payment on her support arrears.

---

[5] "Rule 1:10-3 allows a court to enter an order to enforce litigant's rights commanding a disobedient party to comply with a prior order" or face sanctions. Milne v. Goldenberg, 428 N.J. Super. 184, 198 (App. Div. 2012). Rule 5:3-7, which is cross-referenced in Rule 1:10-3, offers useful remedies to coerce a recalcitrant litigant. The remedies are tailored to address the issues in the case, and include the "issuance of a warrant" as well as "fixing the amount of arrearages and entering a judgment upon which interest accrues." R. 5:3-7(a) and (b).

Additionally, "[w]ith respect to the change of venue request," citing Rule 4:3-3(a), the judge confirmed that he had been "designated" by the assignment judge "to rule on the venue application." In that regard, the judge found that

> defendant is residing in Somerset County and has brought an application to change venue to the county in which she now resides. . . . [P]laintiff indicated at oral argument today that he lost his house in Essex County in November of 2016. And at that point he . . . moved to . . . his brother's house in Passaic. So[,] he's been residing in Passaic. It'll be two years . . . in November.
>
> So the [c]ourt finds that under [Rule] 4:3-3[(a)](4) both parties now reside outside the county of original venue which was Essex. . . . So[,] the [c]ourt will grant . . . defendant's application to change venue to Somerset County.

The judge entered a memorializing order and this appeal followed.

On appeal, plaintiff argues that given his federal lawsuit in which the Family Part of the Essex Vicinage was named as a defendant, there was "a 'conflict of interest'" that precluded the judge from acting "as a neutral arbiter in the dispute." Accordingly, relying on Rule 1:12-1, plaintiff asserts the judge "erred as a matter of law in proceeding in any manner," instead of "disqualif[ying]" himself from the proceedings. We disagree.

Under Rule 1:12-1(g), a judge "shall be disqualified . . . and shall not sit in any matter," when "there is any . . . reason which might preclude a fair and

7

unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so." Pursuant to Rule 1:12-2, "[a]ny party, on motion made to the judge before trial or argument and stating the reasons therefor, may seek that judge's disqualification." The disposition of such a "motion is, at least in the first instance, entrusted to the 'sound discretion' of the trial judge whose recusal is sought." Panitch v. Panitch, 339 N.J. Super. 63, 66 (App. Div. 2001) (quoting Magill v. Casel, 238 N.J. Super. 57, 63 (App. Div. 1990)).

It is well settled that "[l]itigants ought not have to face a judge where there is reasonable question of impartiality." Id. at 67 (quoting Alexander v. Primerica Holdings, Inc., 10 F.3d 155, 162 (3d Cir. 1993)). Notably, "Canon 3(C)(1) of the Code of Judicial Conduct provides that '[a] judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned.'" DeNike v. Cupo, 196 N.J. 502, 516 (2008) (alteration in original). Under both Canon 3(C)(1) and Rule 1:12-1(g), "'it is not necessary to prove actual prejudice on the part of the court' to establish an appearance of impropriety; an 'objectively reasonable' belief that the proceedings were unfair is sufficient." Id. at 517 (quoting State v. Marshall, 148 N.J. 89, 279 (1997)).

To assess whether recusal is required, "[i]n DeNike, the Court stated the key question that must be answered when a claim is made challenging a judge's impartiality is, '[w]ould a reasonable, fully informed person have doubts about the judge's impartiality?'" P.M. v. N.P., 441 N.J. Super. 127, 145 (App. Div. 2015) (second alteration in original) (quoting DeNike, 196 N.J. at 517). See also In re Advisory Letter No. 7-11 of the Supreme Court Advisory Comm., 213 N.J. 63, 73 (2013) (finding that "the overarching objective of the Code of Judicial Conduct is to maintain public confidence in the integrity of the judiciary."). However, "DeNike does not set forth any bright-line rules." State v. Dalal, 221 N.J. 601, 607 (2015). Instead, "the standard calls for an individualized consideration of the facts in a given case." Ibid. Nonetheless, "judges are not free to err on the side of caution," Marshall, 148 N.J. at 276, and "[i]t is improper for a judge to withdraw from a case upon a mere suggestion that he is disqualified 'unless the alleged cause of recusal is known by him to exist or is shown to be true in fact.'" Panitch, 339 N.J. Super. at 66-67 (quoting Hundred E. Credit Corp. v. Eric Schuster Corp., 212 N.J. Super. 350, 358 (App. Div. 1986)).

Here, on July 10, 2017, prior to the filing of the parties' motions, plaintiff filed a pro se complaint in the United States District Court for the District of

New Jersey, naming the New Jersey Superior Court, Essex Vicinage, Family Division, and Judge Donald H. Kessler as defendants. The complaint alleged that plaintiff's constitutional rights were violated when Judge Kessler ordered him to pay $198 per week in child support and changed his child custody status from joint custody to that of a non-custodial parent. See Pinckney v. Superior Court of N.J. Essex Vicinage Family Div., 757 F. App'x 198 (3d Cir. 2018). On May 23, 2018, the District Court dismissed the federal action, finding that "it lacked jurisdiction over the claims against the Family Court and against Judge Kessler in his official capacity, as those claims are barred under the Eleventh Amendment." Id. at 200. On December 14, 2018, the United States Court of Appeals for the Third Circuit affirmed the District Court's dismissal of plaintiff's federal action. Id. at 199.

In these circumstances, we are satisfied that plaintiff's "belief of unfairness" was not "objectively reasonable," Chandok v. Chandok, 406 N.J. Super. 595, 604 (App. Div. 2009) (quoting Panitch, 339 N.J. Super. at 67), and it is highly unlikely that "a reasonable, fully informed person [would] have doubts about the judge's impartiality." DeNike, 196 N.J. at 517. First, plaintiff did not appeal Judge Kessler's order or any of the previous orders adjudicating custody or child support. "In cases like this one, there is an additional concern:

that [litigants] not be allowed to manipulate the judicial system and engage in forum shopping." Dalal, 221 N.J. at 607.

Secondly, the motion judge, who was not Judge Kessler, only adjudicated the parties' motions to enforce litigants' rights. No application to change custody or modify child support was presented to or addressed by the judge. Additionally, when the motion was adjudicated on July 13, 2018, the District Court had already dismissed the federal action. Thus, there was no basis to believe that "a fair and unbiased hearing and judgment" could not be rendered. See id. at 606 (quoting R. 1:12-1(g)). In fact, at the conclusion of the proceeding, plaintiff commended the judge, stating that his decision was "the fairest decision." As "judges are not free to err on the side of caution," Marshall, 148 N.J. at 276, it would have been "improper for [the] judge to withdraw from [the] case upon [plaintiff's] mere suggestion that he [was] disqualified." Panitch, 339 N.J. Super. at 66. Indeed, because "the alleged cause of recusal" did not "exist" and was not "true in fact," disqualification was not warranted. Id. at 66-67 (quoting Hundred, 212 N.J. Super. at 358).

Plaintiff also argues that the judge erred in transferring venue from Essex to Somerset County. Under Rule 4:3-3(a), "[i]n actions in the Superior Court[,] a change of venue may be ordered by the Assignment Judge or the designee of

11

the Assignment Judge of the county in which venue is laid." Specifically, "in Family Part post-judgment motions," a change of venue may be properly considered "if both parties reside outside the county of original venue and application is made to the court by either party to change venue to a county where one of the parties now resides." R. 4:3-3(a)(4).

Here, the judge's decision to transfer venue from Essex to Somerset is amply supported by the record and thus entitled to deference on appeal. See Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) ("The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence," and "an appellate court should not disturb the 'factual findings and legal conclusions of the trial judge unless [it is] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" (alteration in original) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974))).

Plaintiff's remaining arguments challenge the earlier orders entered by the court, including Judge Kessler's orders. However, the only order that is subject to review on this appeal is the July 13, 2018 order identified in plaintiff's notice of appeal. See 1266 Apartment Corp. v. New Horizon Deli, Inc., 368 N.J. Super.

456, 459 (App. Div. 2004) (explaining that "it is only the judgment or orders designated in the notice of appeal which are subject to the appeal process and review" (citing Sikes v. Twp. of Rockaway, 269 N.J. Super. 463, 465-66 (App. Div. 1994))). Stated differently, any arguments raised by plaintiff that fall outside the four corners of the notice of appeal likewise fall outside the scope of our appellate jurisdiction and are not reviewable as a matter of law. Moreover, any appeal of the earlier orders would be untimely and equally beyond our jurisdiction. See In re Hill, 241 N.J. Super. 367, 372 (App. Div. 1990) ("Where the appeal is untimely, the Appellate Division has no jurisdiction to decide the merits of the appeal.").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-6003-17T3