# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0480-20

M.G.S.,

      Plaintiff-Appellant/
Cross-Respondent,

v.

K.F.,

      Defendant-Respondent/
Cross-Appellant.

_____

        Submitted April 19, 2021 – Decided August 25, 2021

        Before Judges Hoffman, Suter, and Smith.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FV-12-0457-21.

        Ruta, Soulios & Stratis, LLP, attorneys for appellant (Demetrios K. Stratis, on the briefs).

        Rotolo Karch Law, attorneys for respondent (Christian Merlino, Charles C. Rifici, and William E. Reutelhuber, on the briefs).

PER CURIAM

After a dismissal of a temporary restraining order (TRO), plaintiff M.G.S. appeals, arguing the trial judge erred by failing to recuse himself and by excluding certain witness testimony.[1] Defendant K.F. cross-appeals the denial of counsel fees. We reverse and remand for a new trial and affirm the denial of counsel fees for the reasons set forth below.

I.

The parties' longtime relationship produced a daughter, A.F., born in May 2020. Defendant father resided with plaintiff at her parents' home for a brief period after the birth of the child.

Shortly after their child's birth, plaintiff ended the relationship, alleging defendant became disruptive while still living at her parents' home. After he moved out of the house, defendant texted plaintiff repeatedly. The parties had difficulty agreeing upon a parenting time schedule, with the challenges and limitations of the COVID-19 pandemic complicating the negotiations.

On June 24, 2020, defendant went to plaintiff's home and began punching the door and windows. Defendant initially refused to leave the premises and the police were dispatched to the property. Defendant left before the police arrived.

---

[1] We use initials to protect the parties' confidentiality, as well as that of their child. R. 1:38-3(d)(10).

A-0480-20

Plaintiff did not seek a temporary restraining order at that time. After this incident, defendant continued to text plaintiff. Several weeks after the door punching incident, plaintiff sought an evaluation by forensic psychologist Dr. Philip Kaplan. Dr. Kaplan diagnosed plaintiff with post-traumatic stress disorder, and he recommended all communications between plaintiff and defendant be conducted through intermediaries to protect her from further harm.

On August 21, 2020, plaintiff filed a domestic violence complaint alleging harassment against defendant. The allegations included defendant sending texts and emails during late night hours, and defendant making at least one derogatory Facebook post. A municipal judge entered a TRO. After the TRO was entered, Dr. Kaplan issued a supplemental report articulating his concern about the risk of violence occurring against plaintiff and their child.

On September 2, 2020, plaintiff filed an amended TRO complaint, citing additional domestic violence history with defendant. The amended complaint alleged defendant made threats of violence to plaintiff over the years, including but not limited to raising his closed fists in plaintiff's face, making choking gestures towards her with his hands, and recounting acts of violence he allegedly committed against his former girlfriend. After the amended TRO complaint was filed, plaintiff retained a second forensic psychologist, Dr. Kelly Champion,

A-0480-20

who opined that plaintiff and the infant A.F. remained in need of protection. Before commencement of the final restraining order hearing, defendant filed a separate complaint seeking custody and support and challenging the paternity of A.F. After reviewing defendant's complaint, Dr. Champion issued a supplemental report in which she opined that plaintiff and A.F. were "at risk of a lethal assault" from the defendant.

On October 5, 2020, the trial judge heard plaintiff's motion in limine to admit the testimony of three witnesses, Dr. Kaplan, Dr. Champion, and defendant's former girlfriend, R.Y.[2] The judge barred the testimony of both experts, finding Dr. Kaplan's report constituted a net opinion, and that Dr. Champion's report "went to the ultimate issue." The judge also barred R.Y. from testifying about prior assaults defendant allegedly committed against her, with minimal explanation. Plaintiff sought leave to file an interlocutory appeal, which we denied.

The final restraining order (FRO) hearing took place October 15, 2020. Prior to trial, plaintiff moved for recusal, arguing that she did not believe she could receive a fair and impartial trial based on the judge's exclusion of her

_____

[2] We use initials to protect the identity of R.Y. as an alleged victim of domestic violence by K.F. in a previous unrelated matter. R. 1:38-3(d)(10).

A-0480-20

witnesses as well as other publicly available information she raised about the judge during the recusal motion. After a brief contentious argument, the judge denied the motion.

During the FRO hearing, plaintiff and defendant testified extensively. The only other witness was plaintiff's mother.

At the conclusion of testimony, the judge made detailed findings, among them; that plaintiff's testimony about predicate acts of harassment by defendant was not credible; and that her testimony about prior acts of domestic violence by defendant against her was not credible. The judge found plaintiff failed to prove purpose to harass, a requisite element under N.J.S.A. 2C:33-4, and consequently found no predicate act had been shown under the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35 (PDVA). The judge then dismissed the TRO and denied defendant's motion for counsel fees. Plaintiff sought a stay of the judge's order, which he denied. We then granted a stay of the TRO dismissal pending appeal. Both plaintiff and defendant appealed.

II.

Plaintiff argues on appeal that the judge should have granted her recusal motion as she reasonably believed that she could not receive a fair and impartial

5

hearing.  To resolve this question, we highlight from the record important elements of the recusal argument and the trial relevant to our analysis.

Immediately before the start of the FRO trial, plaintiff's counsel argued that the judge violated the Judicial Code of Conduct by being "disrespectful" to him when the judge ruled to bar the testimony of plaintiff's two experts and R.Y. Specifically, plaintiff's counsel argued that the judge: ridiculed and disparaged him by calling his arguments "nonsensical," thereby undermining his attorney client relationship with plaintiff; excluded plaintiff's three witnesses; and predetermined plaintiff's case by previously stating the matter was "about parenting time."  Plaintiff's counsel also argued that the judge's publicly available record of judicial misconduct involving a female court employee led to an appearance of general bias against women, which was disqualifying.  The position of plaintiff's counsel was that the accretive effect of the judge's "disrespectful" tone and the act of judicial misconduct reasonably led plaintiff to believe that she could not, as a woman, receive a fair and unbiased hearing.

When plaintiff's counsel raised the misconduct argument, the judge immediately threatened to file an ethics complaint against him for doing so.  The judge stated that he viewed the reference to the judicial misconduct incident as "a threat," and as " bullying."  When the judge accused plaintiff's counsel of

6

informing plaintiff about the judicial misconduct incident, plaintiff's counsel explained that plaintiff learned of the incident when "she Googled your name."

By this point, the judge had already denied the recusal motion to the extent it was grounded in his exclusion of plaintiff's expert testimony and R.Y.'s N.J.R.E. 404(b) testimony. As noted, the judge's response to the misconduct argument was to call plaintiff's argument "insulting" on the record in front of the parties. In what we perceive to be a defensive response, plaintiff's counsel quickly clarified for the judge who was responsible for initiating the misconduct argument, his client. Counsel positioned himself as simply the messenger.

The judge then issued his ruling on plaintiff's recusal motion, "I've taken it under consideration. I'm denying your application for recusal."

After denying plaintiff's application for a brief opening statement, the judge directed plaintiff's counsel to call his first witness, without taking a recess. Plaintiff took the stand. The judge questioned plaintiff extensively during her direct testimony, frequently interrupting her and repeatedly asking her to clarify her own testimony. The judge so thoroughly monopolized the questioning of plaintiff that her counsel effectively delegated to the judge the task of eliciting her direct testimony. Only occasionally did plaintiff's counsel seek leave to question his own client. Conversely, the judge permitted defendant's counsel to

7

conduct his client's direct examination unimpeded, interjecting questions infrequently. This was in stark contrast to the heavily involved approach the judge took during plaintiff's case.

At the trial's conclusion, the judge made detailed credibility findings. He flatly stated that he did not believe plaintiff. He found "exaggeration every step of the way" in her testimony. The judge characterized her demeanor as "evasive," "argumentative," "angry," and "combative." He found numerous inconsistencies between plaintiff's direct testimony, elicited primarily through his own questions from the bench, and her testimony on cross-examination. The judge characterizing defendant's testimony as "clearly calm," found defendant credible. He resolved the parties' significant factual disputes in defendant's favor.[3]

## III.

Motions for recusal "are entrusted to the sound discretion of the judge and are subject to review for abuse of discretion." State v. McCabe, 201 N.J. 34, 45 (2010) (citing Panitch v. Panitch, 339 N.J. Super. 63, 66 (App. Div. 2001)). The

---

[3] The judge never reached the second prong of the Silver analysis, where domestic violence history could properly be considered. See, Silver v. Silver, 387 N.J. Super 112 (App. Div. 2006).

A-0480-20

grounds for disqualifying a judge are set out in Rule 1:12-1. Primarily, they focus on the judge having a familial relationship with the parties or the attorneys or having an interest in the subject of the litigation. R. 1:12-1(a) to (f). The rule also provides that a judge can be disqualified "when there is any other reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so." R. 1:12-1(g). Under Rule 1:12-1(g), "it is not necessary to prove actual prejudice on the part of the court[;]" rather, "the mere appearance of bias may require disqualification." State v. Marshall, 148 N.J. 89, 279 (1997). "However, before the [judge] may be disqualified on the ground of an appearance of bias, the belief that the proceedings were unfair must be objectively reasonable." Ibid. "[B]ias is not established by the fact that a litigant is disappointed in a court's ruling on an issue." Id. at 186.

"[J]udges must avoid acting in a biased way or in a manner that may be perceived as partial. To demand any less would invite questions about the impartiality of the justice system and thereby 'threaten[ ] the integrity of our judicial process.'" DeNike v. Cupo, 196 N.J. 502, 514-15 (2008) (alteration in original) (citing State v. Tucker, 264 N.J. Super. 549, 554 (App. Div. 1993)).

9

The <u>DeNike</u> Court distilled the analysis to one question we find apposite here: "Would a reasonable, fully informed person have doubts about the judge's impartiality?" <u>Id.</u> at 517. On this record, we believe the answer is yes. Plaintiff's counsel made a recusal motion on behalf of his client. The judge reacted viscerally and aggressively to the misconduct argument. He twice labeled it "insulting" in the presence of the litigants. The judge signaled by his choice of language that he considered the misconduct issue off-limits. The warning shot was unmistakable. Inexplicably, he next threatened to file an ethics complaint against plaintiff's counsel for raising the recusal argument. When the judge demanded to know how counsel came into possession of the misconduct charges against him, plaintiff's counsel identified his client as the source of the information. In his haste to extricate himself from the dust-up with the judge, plaintiff's counsel pointed the finger squarely at his client for raising this sensitive yet substantive argument. The judge very clearly made his displeasure known to the attorneys and both parties.

Plaintiff heard and observed all of this right before the judge began to question her extensively. Given the confrontation that occurred, and the judge's knowledge that plaintiff was the genesis of the recusal motion, an objective observer could reasonably question whether the judge would favor defendant,

10

either consciously or subconsciously. Id. at 517. The judge took no recess to allow the trial atmosphere to calm down after discovering plaintiff herself had researched publicly available judicial misconduct charges against him. The judge then made credibility findings adverse to plaintiff soon after he denied the recusal motion. We conclude the judge should have disqualified himself after the contentious exchange between plaintiff's counsel and the judge over the recusal motion. Instead, the judge presided over the trial, questioning plaintiff extensively, frequently interrupting her, and repeatedly asking her to clarify her own testimony.

"[J]udges must refrain . . . from sitting in any causes where their objectivity and impartiality may fairly be brought into question." State v. Deutsch, 34 N.J. 190, 206 (1961). To demand any less would invite questions about the impartiality of the justice system and thereby "threaten[ ] the integrity of our judicial process." State v. Tucker, 264 N.J. Super. 549, 554 (App. Div. 1993).

Plaintiff argues for reversal on substantive grounds, contending that the judge should not have barred plaintiff's witnesses. We do not reach the issue of admissibility of all or part of the plaintiff's expert's opinions or R.Y's N.J.R.E. 404(b) testimony, as we find the judge should have recused himself.

11

We reverse the order dismissing the TRO. The TRO currently in place pending appeal shall remain in effect. The order denying defendant's counsel fees is affirmed. We remand this matter to the presiding judge of the Family Part for entry of an order assigning another judge to preside over the new FRO trial.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0480-20