**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1163-24

SALVATORE SALSA,

    Plaintiff-Appellant/
Cross-Respondent,

v.

KATHERINE SALSA,

    Defendant-Respondent/
Cross-Appellant.

_____

        Submitted May 4, 2026 – Decided June 9, 2026

        Before Judges Sabatino and Bergman.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-0268-19.

        George G. Gussis PA, attorney for appellant/cross-respondent (George G. Gussis, on the briefs).

        Keith Winters Wenning and Harris, LLC, attorneys for respondent/cross-appellant (Brian D. Winters, on the brief).

PER CURIAM

This matter returns to us after we vacated portions of the parties' Dual Judgment of Divorce ("DJD") and remanded specific equitable distribution issues to the Family Part, requiring more detailed findings surrounding the calculation of value of plaintiff Salvatore Salsa's contributions to three properties acquired by defendant Katherine Salsa n/k/a Ullman, prior to the marriage and the disposition of certain financial accounts and motor vehicles. We affirmed the remaining provisions of the trial court's DJD.[1]

Following our remand, plaintiff moved to disqualify the trial judge from presiding over the remand hearing, which the court denied. Thereafter, the court held partial hearings on May 25, 2022, and July 19, 2022, and rendered a limited order and decision on September 13, 2022, regarding equitable distribution of the properties only. The order also required the parties to retain a joint expert to perform a forensic accounting of the financial accounts and deferred decision on the distribution of the motor vehicles.

On June 11, 2024, the remaining issues were heard before a different Family Part judge based on the retirement of the first judge who had presided over the divorce trial and partial remand hearing. The second judge issued a final order and written decision on November 12, 2024. Plaintiff now appeals

---

[1] Salsa v. Salsa, No. A-3363-19 (App. Div. Nov. 10, 2021).

this order, the order of September 13, 2022, and the February 4, 2022, order denying plaintiff's disqualification motion. Defendant cross-appeals, asserting a calculation error concerning the monies owed to plaintiff from the accounts based on a supplemental report the court failed to consider. After our consideration of the record, the parties' arguments, and application of the relevant legal principles, we affirm the provisions of the court orders plaintiff challenges on appeal. We decline to consider the credit issues raised in defendant's cross-appeal because those issues were not raised to the trial court and have not been decided on the merits or subject to a final order. In sum, the final decisions of the Family Part remain intact.

I.

The underlying facts and procedural history are well known to the parties and need not be recited at length here. See Salsa v. Salsa, No. A-3363-19 (App. Div. Nov. 10, 2021) (slip op. at 3-7). We detail our remand instructions set forth in our prior opinion that stated:

> [The matter is remanded for] further consideration of the equitable distribution award. Most importantly, the trial court needs to reconsider that award—and make more detailed findings—in light of undisputed evidence that the parties commingled rental income and other funds derived from properties the wife purchased before the marriage, but which the husband thereafter renovated and maintained, with rental income and

3

funds derived from properties bought after the husband and wife married.

We also remand concerning the court's disposition of the vehicles and certain financial accounts. We affirm as to the other issues, including the court's ruling that both parties bear their own respective attorney's fees.

As noted above, the trial judge denied plaintiff's disqualification motion, issuing an order under date of February 4, 2022, finding he was not objectively shown to be biased and that reversal "on appeal is . . . not sufficient grounds for recusal."[2] Following two days of hearings, the court entered an order and written decision on September 13, 2022, finding defendant had commingled rental income from three properties purchased before the marriage—313 Townsend Street, 74 Welton Street, and 9 Seventh Street, all in New Brunswick—by depositing rents into a single account and using those funds to service the properties as well as for marital expenses. As a result, the court determined that the properties were no longer immune from equitable distribution as previously decided and ordered them to be divided equally between the parties.

The court also rescinded prior credits from the previous judgment that awarded defendant the proceeds from these properties including a 1031

---

[2] Plaintiff unsuccessfully requested emergent appellate relief concerning this issue and other issues, the dispositions of which are not detailed herein as they are not pertinent to this appeal.

A-1163-24

exchange involving 157 North Broad Street, Trenton, instead ordering equal division of the net sale proceeds. The court further denied plaintiff's request to award him eighty percent of the net equity in these properties, finding there was "no way to determine either party's contribution to the increase in value of the properties" as "neither party provided quantifiable proof of the value of repairs made to the properties."

Additionally, the court ordered that defendant was entitled to $43,000, which represented her pre-marital contributions toward the purchase of 9 Seventh Street and 313 Townsend Street. The court also rescinded a previously determined credit to defendant for 151 Hale Street and divided the net balance of the sale price of 157 North Broad Street equally.

The court found that the financial accounts held at Magyar Bank and a tax escrow account in the defendant's name were subject to equitable distribution because both pre-marital and marital funds had been deposited and marital expenses were paid from those accounts. However, due to incomplete and insufficient testimony and documentation regarding the parties' financial accounts, the court ordered a joint forensic accounting to determine the source and use of funds in all accounts from before and during the marriage, including a review of the defendant's tax escrow account.

5

The order directed the parties to equally share the costs for the forensic accountant, with the possibility of future reapportionment by the court. The court also scheduled a status conference to be held upon completion of the forensic accounting and deferred the issue of the distribution of vehicles until after the accounting was complete.

Following the production of the forensic accounting, the matter came before a second judge due to the retirement of the first judge. The second judge presided over the final phase of the remand concerning the financial accounts and vehicles. A hearing was held on June 11, 2024, focusing on the remaining outstanding issues. The parties had engaged the accounting firm of Cowen, Gunteski & Co., PA, naming Joseph Gunteski and Gina Berkery—both certified public accountants—who provided a forensic accounting report with a detailed analysis of all relevant accounts and testified at the hearing.

The court first noted that the parties had reached a settlement regarding the distribution of vehicles and equipment, which was placed on the record. The court also accepted the accountants' analysis in full, finding them to be unbiased and credible experts and determined that the plaintiff was owed $85,134 as his share of the equitable distribution from the parties' financial accounts.

A-1163-24

The court explicitly declined to revisit issues already adjudicated by the previous order entered on September 13, 2022, including the plaintiff's claims for a disproportionate distribution of the properties based on "sweat equity" for work performed, finding that the court previously found that plaintiff had failed to provide sufficient evidence to quantify the value of such contributions and reconsideration of those issues was not warranted. The court also found that the costs of the forensic accounting would be shared equally by the parties and that each party would bear their own attorney's fees and costs.

Plaintiff appeals from the trial court's orders of February 4, 2022, September 13, 2022, and November 12, 2024. On appeal, plaintiff asserts (1) the trial judge committed reversible error in refusing to disqualify himself from conducting the remand hearing; (2) the court committed reversible error by not distributing a disproportionate amount of the sale proceeds of the pre-marital properties to him based on his work on the properties and despite the substantial increase in value during the marriage; (3) the court abused its discretion by not ordering defendant to pay a disproportionate amount for the forensic accountant costs based on defendant's failure to provide the accounting for the remand hearing as ordered; (4) the trial court abused its discretion by not directing the defendant to contribute to plaintiff's counsel fees for the additional fees he

7

incurred by not providing the accounting as ordered; (5) the court committed reversible error by not reconsidering the September 13, 2022 order; and (6) the court erred in returning defendant's initial investment of $43,000 to her as this was a "gift to the economic partnership" that "became a de facto interspousal gift."

Defendant cross-appeals, asserting the court made a "ministerial error" in failing to adjust the amount of money defendant would owe plaintiff per the accounting "supplemented" following the hearing.

## II.

### A.

We first address plaintiff's contention that the court erred by failing to recuse itself due to an alleged bias against him. Plaintiff's argument is limited to his claim the judge should have recused himself after committing "plain error" in the original ruling.

The decision on a motion for recusal is "entrusted to the 'sound discretion' of the trial judge whose recusal is sought." Panitch v. Panitch, 339 N.J. Super. 63, 66 (App. Div. 2001) (quoting Magill v. Casel, 238 N.J. Super. 57, 63 (App. Div. 1990)). The law governing recusal recognizes that because "judges embody the court" in the public eye, "their conduct . . . can promote as well as erode

confidence in the Judiciary." In re Reddin, 221 N.J. 221, 223 (2015). The "public will lose faith in our justice system if it believes that judges are hearing cases despite conflicting interests that strain their ability to be impartial." In re Advisory Letter No. 7-11 of Supreme Ct. Advisory Comm. on Extrajudicial Activities, 213 N.J. 63, 70 (2013). "To that end, judges must 'refrain . . . from sitting in any causes where their objectivity and impartiality may fairly be brought into question.'" Id. at 70-71 (quoting DeNike v. Cupo, 196 N.J. 502, 514 (2008)).

Any party may move pursuant to Rule 1:12-2 for a trial judge's recusal. Panitch, 339 N.J. Super. at 66. To succeed, movants must show an "appearance of bias" rather than "actual prejudice . . . ." Amato v. Twp. of Ocean Sch. Dist., 480 N.J. Super. 239, 246 (App. Div. 2024) (quoting Panitch, 339 N.J. Super. at 66-67). For example, Code of Jud. Conduct, "Canon 3(C)(1) instructs that '[a] judge should disqualify himself or herself in a proceeding which the judge's impartiality might reasonably be questioned.'" In re Advisory Letter No. 7-11, 213 N.J. at 72 (alteration in original). And Rule 1:12-1(g) requires disqualification for any "reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so." Id. at 73.

A-1163-24

Accordingly, courts analyze circumstances meriting recusal objectively rather than subjectively. Amato, 480 N.J. Super. at 246. For this reason, a judge need not "withdraw from a case upon a mere suggestion that he is disqualified," because the governing standards require an "alleged cause of recusal" to be either "known" in fact to the judge or demonstrated in the motion "to be true in fact." Panitch, 339 N.J. Super. at 66 (quoting Hundred E. Credit Corp. v. Erich Schuster, 212 N.J. Super. 350, 358 (App. Div. 1986)).

Under this objective measure, bias sufficient to merit recusal "cannot be inferred from adverse rulings against a party." State v. Harris, 466 N.J. Super. 502, 555 (App. Div. 2021); Strahan v. Strahan, 402 N.J. Super. 298, 318 (App. Div. 2008). "[T]he fact that a judgment resulting from previous proceedings is reversed on appeal is likewise not a sufficient ground for disqualification." Matthews v. Deane, 196 N.J. Super. 441, 445 (Ch. Div. 1984) (quoting State v. Flowers, 109 N.J. Super. 309, 311-12 (App. Div. 1970)) (emphasis added).

Applying the above principles to the factual record, we conclude plaintiff's contention lacks merit for mandatory recusal. Plaintiff limits his argument to the claim he would not "receive a fair hearing" on remand "conducted by the same" judge because this court found that judge committed "plain error" in the original proceeding. Plaintiff's contention is unavailing

because the record does not demonstrate that the trial judge would not be fair and impartial in the remand and, as we previously stated, a reversal and remand do not in and of itself require recusal. The court's rejection of the motion to recuse itself was not an abuse of discretion.

B.

We next turn to plaintiff's contention that the court erred in its equitable distribution of the properties, which he alleges failed to recognize his "sweat equity." Plaintiff highlights the pre-marital properties at issue—313 Townsend Street, 74 Welton Street, and 9 Seventh Street—all increased in value. He argues the court erred by failing to find him "solely responsible for the increase in value," and instead finding it "could not value" plaintiff's work on this record. Plaintiff alleges this caused the court to err by awarding him fifty percent, rather than his requested proportion of eighty percent, of the properties' equity.

This court reviews the trial court's division of marital assets for an abuse of discretion. Slutsky v. Slutsky, 451 N.J. Super. 332, 355 (App. Div. 2017). The court's "broad authority" to make such divisions, Wadlow v. Wadlow, 200 N.J. Super. 372, 377 (App. Div. 1985), entitles its decision to deference unless it is clearly unfair, unjust, or contrary to the evidence. Valentino v. Valentino, 309 N.J. Super. 334, 339 (App. Div. 1998); see also Francavilla v. Absolute

11

Resolutions VI, LLC, 478 N.J. Super. 171, 178 (App. Div. 2024) (decision abuses discretion if "'manifestly unjust' under the circumstances"). By contrast, a "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." La Sala v. La Sala, 335 N.J. Super. 1, 6 (App. Div. 2000) (quoting Manalapan Realty v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The doctrine of equitable distribution reflects "an acknowledgment 'that marriage is a shared enterprise, a joint undertaking, that in many ways [ ] is akin to a partnership.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 284 (2016) (alteration in original) (quoting Smith v. Smith, 72 N.0, 361 (1977)); accord Rothman v. Rothman, 65 N.J. 219, 229 (1974). "The goal of equitable distribution . . . is to effect a fair and just division of marital [property]." M.G. v. S.M., 457 N.J. Super. 286, 294 (App. Div. 2018) (alteration and omission in original) (quoting Steneken v. Steneken, 183 N.J. 290, 299 (2005)).

"This demands more than simply 'mechanical division . . . .'" D.M.C. v. K.H.G., 471 N.J. Super. 10, 30 (App. Div. 2022) (quoting M.G., 457 N.J. Super. at 294). "The word 'equitable' itself implies the weighing of the many considerations and circumstances that are presented in each case." Stout v. Stout, 155 N.J. Super. 196, 205 (App. Div. 1977). Therefore, each "case should

be examined as an individual and particular entity" rather than "presumptively" assigning "[fifty percent], of all eligible assets to each spouse . . . ." Rothman, 65 N.J. at 232 n.6.

The Court has outlined a three-step process to follow in the equitable distribution of marital assets. Id. at 232. First, a court decides "what specific property of each spouse is eligible for distribution." Ibid. Second, the court "must determine its value for purposes of such distribution." Ibid. Third, the court "must decide how such allocation can most equitably be made." Ibid. At this step, statutory law requires the court to consider the following factors:

> a. The duration of the marriage . . . ;
>
> b. The age and physical and emotional health of the parties;
>
> c. The income or property brought to the marriage . . . by each party;
>
> d. The standard of living established during the marriage . . . ;
>
> e. Any written agreement made by the parties before or during the marriage . . . concerning an arrangement of property distribution;
>
> f. The economic circumstances of each party at the time the division of property becomes effective;
>
> g. The income and earning capacity of each party . . . ;

13

h. The contribution by each party to the education, training or earning power of the other;

i. The contribution of each party to the acquisition, dissipation, preservation, depreciation or appreciation in the amount or value of the marital property . . . as well as the contribution of a party as a homemaker;

j. The tax consequences of the proposed distribution to each party;

k. The present value of the property;

l. The need of a parent who has physical custody of a child to own or occupy the marital residence . . . and to use or own the household effects;

m. The debts and liabilities of the parties;

n. The need for creation, now or in the future, of a trust fund to secure reasonably foreseeable medical or educational costs for a spouse . . . or children;

o. The extent to which a party deferred achieving career goals; and

p. Any other factors which the court may deem relevant.

[N.J.S.A. 2A:34-23.1.]

We note in plaintiff's first appeal, we determined he may be entitled to equity in the pre-marital properties according to the value of the improvements he made to them. However, on remand, plaintiff acknowledged he could not prove the value of those improvements and did not present any competent

14

evidence demonstrating the value of those improvements or his services. Here, the court properly recognized this lack of competent proofs and did not abuse its discretion in distributing fifty percent of the pre-marital properties to plaintiff.

In rejecting plaintiff's claim to a greater share of the properties' sale proceeds, the court found plaintiff failed to provide "any substantial proofs demonstrating the value of" his work which would entitle him to the eighty percent share he sought. The court declined to speculate as to the "value of that work." "There is no way to determine either party's contribution to the increase in value of the" three properties because neither party presented evidence on this issue. The court further found that "each party shall be entitled to half of the value of the properties," because defendant commingled "the properties purchased prior to the marriage" and "neither party provided quantifiable proof of the value of repairs made to the properties." These findings were amply supported by the record and were not an abuse of discretion.

In its final order that denied reconsideration of this issue, the second judge reiterated the "dearth of any substantial proofs demonstrating the value of the work plaintiff alleges he contributed towards the increase in value of the properties." The court found there was not "even a scintilla of testimony or

evidence detailing the value of his 'sweat equity' contribution towards the increase in value of the three properties" and that it "cannot simply guess or pull that number out of thin air to determine what work [p]laintiff performed or what value that work should be credited to [p]laintiff as 'sweat equity' which increased the value in the properties by an unidentified amount."

Our case law encourages a particularly "'great deference to discretionary decisions of Family Part judges.'" Satz v. Satz, 476 N.J. Super. 536, 549 (2023) (quoting Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012)). This deference "is appropriate because the Family Part judges are presumed to have a 'specialized knowledge and experience . . . .'" N.J. Div. of Child Prot. & Permanency v. S.K., 456 N.J. Super. 245, 261 (App. Div. 2018) (quoting N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 427 (2012)); accord Satz, 476 N.J. Super. at 548; Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013); see also Slutsky, 451 N.J. Super. at 344 (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)) ("proper factfinding in divorce litigation involves the Family Part's 'special jurisdiction and expertise in family matters,' which often requires the exercise of reasoned discretion.").

Based on these standards, this court will affirm "as long as the trial court could reasonably have reached its result from the evidence presented, and the

award is not distorted by legal or factual mistake." La Sala, 335 N.J. Super. at 6.

Of note, we previously recognized plaintiff could be eligible to a degree of equity in the pre-marital properties at issue because we determined it was "undisputed" plaintiff completed "repairs, renovations, and maintenance of the pre-marital" properties. In particular, the parties "essentially agreed that the husband's efforts increased the value of" 313 Townsend Street, 74 Welton Street, and 9 Seventh Street. The degree of equity plaintiff earned in these properties was an essential part of our remand.

Yet at trial, plaintiff acknowledged he "can't actually prove" he was the sole efficient cause of the properties' increase in value, and the court accurately recited that "he has not provided any substantial proofs demonstrating the value of" the work performed. That is, defendant's alternative argument is correct plaintiff failed to "produce any evidence whatsoever as to the value of those improvements" or that plaintiff made "the 'sole' contributions toward the value."

As such, we conclude the trial court's decision to award plaintiff fifty percent of the properties' value rather than the eighty percent he requested was based on substantial, credible evidence in the record and was not an abuse of

discretion. Nor was it error for the second judge to deny reconsideration of this issue for the reasons stated by the court.

In addition, we conclude the court did not abuse its discretion in crediting defendant $43,000, as evidence was presented at trial that this sum was the pre-marital contribution made to the equity in the properties by defendant at the time of the parties marriage. We further conclude plaintiff's contention that the $43,000 was a "gift to the marriage" lacks sufficient merit to warrant further discussion in a written opinion and we affirm this determination for the reasons stated by the trial court. R. 2:11-3(e)(1)(E).

## C.

We now address plaintiff's contentions that the trial court abused its discretion by not ordering defendant to pay a disproportionate amount for the forensic accountant costs and by not directing the defendant to contribute to plaintiff's counsel fees for the additional fees he incurred by not providing the accounting as ordered. We determine these arguments lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E). We add only that there was substantial credible evidence in the record and the court made detailed findings to support its decision primarily based on the fact that

neither party acted in bad faith in requiring the parties to equally share in these costs.

## D.

Finally, we address defendant's cross-appeal asserting the court made a "ministerial error" in failing to adjust the amount of money defendant would owe plaintiff per the "supplemented" accounting provided by the joint expert following the hearing. We note the record does not reflect that either party made an application to the court to reconsider the award of $85,134 to plaintiff based on the expert's supplemental report that allegedly amended this amount to $72,002.09, nor was any order entered by the court addressing this report. Therefore, we make no determination concerning the issues raised in the cross-appeal and leave this determination to the trial court upon proper application by either party. We direct any application to the trial court concerning this issue to be made within thirty days from the date of this opinion.

To the extent we have not addressed any of defendant's remaining arguments, we conclude those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

19

A-1163-24