**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3797-21

GARY A. MATUSOW,

     Plaintiff-Appellant,

v.

INSPIRA HEALTH NETWORK,
INC., a/k/a SOUTH JERSEY
HEALTH SYSTEM, INC.,
GLADWYN D. BAPTIST,
M.D., DAVID S. SHIELDS, M.D.,
and STEVEN C. LINN, M.D.,
jointly, severally and in the
alternative,

     Defendants-Respondents,

and

SOUTH JERSEY HOSPITAL, INC.,
and THOMAS F. MITROS, M.D.,

     Defendants.

_____

Argued September 25, 2024 – Decided November 12, 2024

Before Judges Mayer, DeAlmeida and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0216-19.

Anthony M. Bedwell Law, LLC, attorneys for appellant (Anthony M. Bedwell and Alissa Pyrich, of counsel and on the briefs).

Jennifer B. Barr argued the cause for respondents (Cooper Levenson, PA, attorneys; Jennifer B. Barr and Brittany A. Bonetti, on the brief).

PER CURIAM

Plaintiff Gary A. Matusow appeals from the Law Division's June 27, 2022 order granting summary judgment in favor of defendants Inspira Health Network, Inc., a/k/a South Jersey Health System, Inc., South Jersey Hospital, Inc., Gladwyn D. Baptist, M.D., David S. Shields, M.D., Thomas F. Mitros, M.D. and Steven C. Linn, M.D., and dismissing plaintiff's complaint. We affirm.

I.

Plaintiff, a gastroenterologist, held privileges at defendant South Jersey Hospital, Inc. (hospital). He performed endoscopy procedures at the hospital and other ambulatory surgical centers not affiliated with the hospital.

In 2007 and 2008, the hospital convened four ad hoc committees to investigate plaintiff's performance. The first investigation concerned several

procedures plaintiff performed using conscious sedation[1] (CS), and resulted in a finding plaintiff "engaged in professional conduct which may have affected the delivery of patient care and which [did] not conform to professional standards as determined by the [m]edical [s]taff." The second and third investigations concerned plaintiff's workplace behavior and failure to complete a reappointment application, respectively, and both resulted in plaintiff's reprimand and admonishment. Plaintiff then filed a complaint against defendants[2] alleging breach of contract and tort claims, and seeking injunctive relief and monetary damages.

The fourth investigation again concerned plaintiff's practices including the use of CS procedures. At his request, plaintiff began a fair hearing process to address the allegations against him. In December 2012, the parties entered into a settlement agreement, resolving the hospital's investigation, plaintiff's complaint and the fair hearing process.

---

[1] CS has been replaced by "moderate sedation," defined as "a drug-induced depression of consciousness during which patients respond purposefully to verbal commands, either alone, or accompanied by light tactile stimulation." See 53 N.J.R. 2013(a), 2045 (adopted Oct. 13, 2021) (codified at N.J.A.C. 13:35-4A.3).

[2] Inspira Health Network, Inc. was not named as a defendant.

Pursuant to the terms of the agreement, plaintiff agreed, "consistent with the practice of other [g]astroenterologists at the [h]ospital . . . to utilize the services of [a]nesthesia for the procedures he conducts at the [h]ospital and to not utilize CS at the [h]ospital under any circumstances."

Plaintiff also agreed not to exercise CS privileges at South Jersey Healthcare Regional Medical Center, a division of the hospital, unless he and the hospital agreed in writing. The hospital consented to considering reinstatement of plaintiff's CS privileges conditioned on its review of his performance of CS at the independent ambulatory surgical centers.

The agreement also contains specific language for the hospital's reporting obligations, including the National Practitioner Database[3] (NPDB):

> The [h]ospital shall report the following to the [NPDB], and to all other circumstances where there is a reporting obligation:
>
> > It was proposed that the practitioner be subject to corrective action for certain alleged clinical and behavioral issues. The hospital and the practitioner have agreed to resolve all matters and therefore no determinations were made by the Fair Hearing Committee with respect to the merits of such issues, and no corrective action was implemented.

---

[3] 45 C.F.R. § 60.1 to .22.

Five months after executing the agreement, the hospital filed a reporting form with the New Jersey Division of Consumer Affairs (DCA). The form was completed by Brenda Benton, the hospital's Director of Medical Staff Services, and signed by Steven C. Linn, M.D. In the section of the form requiring the reporting entity to describe "[t]he reportable action taken by the health care entity," Benton checked the boxes indicating:

> Voluntary relinquishment by health care professional of any partial privileges or authorization to perform a specific procedure if:
>
>> The health care entity is reviewing the health care professional's patient care or reviewing whether, based upon its reasonable belief, the health care professional's conduct demonstrates an impairment or incompetence or is unprofessional, which incompetence or unprofessional conduct relates adversely to patient safety.

However, when transcribing the reporting language specified in the agreement, Benton mistakenly wrote, "It was proposed that the practitioner be subject to corrective action for certain alleged criminal and behavioral issues." (emphasis added). The hospital mailed a copy of the form to plaintiff. Six months later, Benton was advised of the mistake and submitted an amended form correcting the word "criminal" to "clinical."

5

The New Jersey Board of Medical Examiners investigated plaintiff.  In October 2016, he voluntarily ceased practicing medicine pending the conclusion of the investigation.  While voluntarily suspended, plaintiff renewed several of his patients' prescriptions and called in prescriptions for controlled substances for himself using his partner's name.  In July 2017, plaintiff surrendered his federal Drug Enforcement Administration (DEA) registration, which the DEA deemed to be for cause.

In May 2018, the Board's investigation concluded through a consent order suspending plaintiff's medical license for three years and imposing other conditions including education, programming and supervision.  A subsequent modified consent order permitted plaintiff to return to medical practice and perform endoscopic procedures, subject to conditions including monitoring.  Upon conclusion of the monitoring period, plaintiff was permitted to petition the Board for an unrestricted license.

In April 2019, plaintiff filed a complaint asserting breach of contract, contending defendants violated the agreement by incorrectly reporting him to the DCA.  He sought compensatory and consequential damages, among other relief.  At the close of discovery, defendants moved for summary judgment, which plaintiff opposed.

6

After hearing oral argument on the motion, the trial judge granted defendants' motion and dismissed the complaint. The judge reasoned:

> [The agreement] ended the investigation. But for the investigation, this restriction of privileges would have never occurred, and you can't argue anything else. So I think the hospital clearly, by law and . . . under the terms of this agreement had to report to the DCA.
>
> . . . [I]t's very unfortunate that . . . the hospital person reporting and writing the information down on the form wrote criminal instead of clinical where it was supposed to be written. Did that have any effect on what the Board of Medical Examiners did? I can't say that it did.
>
> . . . .
>
> I see nothing wrong that the hospital did. I think they did exactly what they were obligated to do under this agreement, and under law.

On June 27, 2022, the judge entered an order memorializing the decision. This appeal follows, in which plaintiff contends the judge incorrectly concluded defendants were required to report to the DCA, overlooked evidence defendants reported incorrect information to the DCA and demonstrated bias against plaintiff. He also argues a jury should have decided whether the defendants acted in good faith in reporting to the DCA.

II.

A-3797-21

We review de novo a trial court's ruling on a motion for summary judgment, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022) (citing Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 511 (2019)). We must decide whether "there is [a] genuine issue as to any material fact" when the evidence is "viewed in the light most favorable to the non-moving party[.]" Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405-06 (2014) (first quoting R. 4:46-2(c); and then quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). "To decide whether a genuine issue of material fact exists, the trial court must 'draw[ ] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)).

"The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill, 142 N.J. at 540). "If there is no genuine issue of material fact, the court must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)).

A-3797-21

On de novo review, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Vell & Gossett Co., 239 N.J. 531, 552 (2019) (alteration in original) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

We first address whether the hospital was required to report plaintiff to the DCA under the New Jersey Health Care Professional Responsibility Act (the Act), (codified at N.J.S.A. 26:2H-12.2a to -12.2d, with amendments to other statutory provisions). Pertinent here, a hospital shall notify the DCA in writing if a health care professional whom it has granted privileges

> voluntarily relinquishes any partial privilege or authorization to perform a specific procedure if: (a) the health care entity is reviewing the health care professional's patient care or reviewing whether, based upon its reasonable belief, the health care professional's conduct demonstrates an impairment or incompetence or is unprofessional, which incompetence or unprofessional conduct relates adversely to patient care

or safety; or (b) the health care entity, through any member of the medical or administrative staff, has expressed an intention to do such a review . . . .

[N.J.S.A. 26:2H-12.2b(a)(4).]

Hospitals are required to report by submitting the requisite DCA form within seven days of the reportable action or event. N.J.S.A. 26:2H-12.2b(e). The DCA then forwards the report to the appropriate licensing board. N.J.S.A. 45:1-40.

Plaintiff argues the hospital was not required to file a report because he did not permanently relinquish his CS privileges, he merely had a condition placed on the privilege. We disagree.

Pursuant to the terms of the agreement, plaintiff could not practice CS privileges at the hospital under any circumstances, until the hospital reinstated those privileges. That is, he "gave up" or relinquished CS privileges, at least for a time. Nothing in the Act limits a hospital's reporting obligation to physicians who permanently relinquish privileges, and we reject plaintiff's cramped reading of the statute particularly because its purpose is protection of the public. See 42 N.J.R. 2577(a), 2577 (Nov. 1, 2020) ("The Act was designed to strengthen patient protections by assuring that health care professionals who have

10

demonstrated impairment or incompetence or engaged in professional misconduct become known to their licensing boards.")

We also find unavailing plaintiff's contention the hospital was not required to report because it was no longer "reviewing" him at the time it made the report. While not addressed by the parties, the Act requires a hospital to report within seven days of the reportable action or event. N.J.S.A. 26:2H-12.2b(e). Thus, the hospital was arguably required to report plaintiff to DCA within seven days of forming an ad hoc committee to investigate his conduct regarding CS, although it did not file the report until five months after the parties executed the agreement. The reporting requirement was not extinguished by the agreement because the hospital could not contract out of its statutory obligation to report, and the agreement anticipated both federal and "other mandatory reporting."

Plaintiff further argues the hospital checked off the wrong box on the reporting form, and instead should have indicated the reporting was based on:

> Conditions or limitations placed on the exercise of clinical privileges or practice within the health care entity (including, but not limited to second opinion requirements, non-routine concurrent or retrospective review of admissions or care, non-routine supervision by one or more members of the staff, completion of remedial education or training).

He further contends this error, along with the incorrect reporting of his conduct as criminal, created disputed issues of fact as to whether the hospital provided the information "in good faith and without malice," which should have been resolved by a jury. We disagree.

There was no support in the record that the misstatement was anything other than a clerical transcribing error corrected by Benton when she learned of it. In addition, plaintiff cannot establish a loss or damages resulting from the reporting, even viewing the facts in the light most favorable to him. He does not challenge the hospital's report to the NPDB, which contained the agreed upon language in the agreement and which the NPDB was required to forward to the Board. See 45 C.F.R. § 60.18. The record was bereft of any evidence the initial misreporting caused plaintiff any harm because the Board would have conducted an investigation regardless of the information reported. N.J.S.A. 45:9-19.9(c). As here, "conclusory and self-serving assertions by one of the parties are insufficient to overcome the [summary judgment] motion." Puder v. Buechel, 183 N.J. 428, 440-41 (2005) (citations omitted).

We next turn to plaintiff's contention the trial judge demonstrated bias by expressing his personal opinion of plaintiff's competence as a physician,

commenting on plaintiff's risk to future patients and suspension from practice, and speculating on whether plaintiff had a substance abuse issue.

"Litigants ought not have to face a judge where there is [a] reasonable question of impartiality." Panitch v. Panitch, 339 N.J. Super. 63, 67 (App. Div. 2001) (quoting Alexander v. Primerica Holdings, Inc., 10 F.3d 155, 162 (3d Cir. 1993)). The inquiry is whether "a reasonable, fully informed person [would] have doubts about the judge's impartiality[.]" In re Advisory Letter No. 7-11 of the Sup. Ct. Advisory Comm. on Extrajudicial Activities, 213 N.J. 63, 75 (2013) (quoting DeNike v. Cupo, 196 N.J. 502, 517 (2008)). "[I]nappropriate comments do not, by themselves, necessarily equate to bias." Panitch, 339 N.J. Super. at 68 (citing State v. Leverette, 64 N.J. 569 (1974)).

The judge's comments about plaintiff's competence and suspension were made in the context of the hospital's obligation to report his conduct and its delay in doing so. Likewise, the judge mentioned plaintiff's substance abuse because the record reflected he self-prescribed controlled substances and twice attended a treatment program. Having reviewed the transcript, we are unconvinced the judge's discussion, considered in the context of the motion, would cause a reasonable, fully informed person to doubt the judge's impartiality.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3797-21